FRANKLIN *et al. v.* ELLIS *et al.*

[93 South. 738, No. 22880.]

1. LEVEES AND FLOOD CONTROL. *Act regulating manner of letting of contracts not unreasonable restriction of power given board by Constitution.*

Chapter 169, Laws 1922, is constitutional and valid as a reasonable regulation of the administration of the affairs and functioning of the board of levee commissioners, and does not unreasonably restrict or impair the efficient exercise of the power given by section 232, Constitution of 1890.

2. LEVEES AND FLOOD CONTROL. *Act regulating number, character, and salaries of employees of levee board a reasonable regulation.*

Chapter 170, Laws 1922, is valid as a reasonable regulation of the administration of the affairs of the board of levee commissioners in all respects except that it impairs and is ineffective as to contracts made by the board with employees before passage of act.

3. CONSTITUTIONAL LAW. *Contracts between levee board and employees, cannot be annulled by legislature.*

Duly authorized contracts made by a levee board with employees, employed to perform certain and specific private duties, could not be annulled by the legislature, in view of the provisions of the state

and United States Constitutions forbidding impairment of obligation of contracts, and are valid and binding, notwithstanding Laws 1922, chapter 170.

APPEAL from chancery court of Coahoma county.

HON. G. E. WILLIAMS, Chancellor.

Suit by M. H. Ellis and others against L. C. Franklin and others. From the decree, defendants appeal. Affirmed in part, and reversed in part, and judgment entered.

*Maynard, Fitzgerald & Venable,* for appellants and cross-appellees.

Defendants in the court below attacked both of the acts of the legislature as being unconstitutional. The ground of attack upon chapter 169 with reference to contracting for work and material is that this law is an impairment and invasion and negation of the powers fixed by the constitution in the board of levee commissioners of the Yazoo-Mississippi Delta levee district, that it is unreasonable to such an extent that its observance would frustrate the whole purpose and object for which the levee board was created. The same attack is made upon house bill No. 752, chapter 170, of the Session Laws, which seeks to prescribe what officers and employees the levee board shall have and which fixes the maximum salaries to be paid.

In respect to this last law, it is also urged that it cannot have validity in this case in that it impairs the obligation of the contracts entered into by the persons mentioned in the bill with the levee board prior to its enactment for certain services to be rendered at a stipulated salary. We appreciate the fact that if these laws fall within the domain of legislative action, that their wisdom or unwisdom is not subject to review by the courts. But we say that as against unwise legislation of this character, we have the protection of the constitution and our contention is that the passage of laws such as the ones under review is beyond the jurisdiction of action by the legislature.

Chapter 169 provides that all contracts for work or material in connection with the location, construction, alteration, maintenance or repair of the levees of the Yazoo Mississippi Delta levee district should be let by public bids after advertisement in a newspaper for two and three weeks respectively, "provided, however, that when a grave emergency caused by high water or caving banks shall exist along the levee line of said district and said emergency, its cause and probable effect shall be certified to said board of levee commissioners by the chief engineer of said levee district and said board of commissioners shall find that said emergency actually exists and the findings of said board of levee commissioners together with the certificate of the chief engineer of said levee district as to said emergency shall be placed of record on the minutes and proceedings of said board of commissioners either at a regular or special meeting of said board or in vacation, the said board of commissioners may then without advertising the same as above provided proceed to let any necessary contract for emergency work."

It will be noticed that when an emergency arises caused by high water or caving banks that the engineer shall certify its cause and probable effects to the levee board. This of course entails an inspection by the engineer. The board of levee commissioners must make a personal investigation and inspection and find that said emergency actually exists, and then the board must meet in formal meeting as a board and the findings of the board, together with the certificate of the chief engineer shall be placed of record. The members of the board, as the court will take judicial knowledge of, live in the various counties making up the district, and it is apparent that several meetings would be necessary to follow the procedure laid down by the legislature as being necessary before material can be purchased or contract for labor let in excess of five hundred dollars.

In chapter 170, the legislature undertook to say just what employees the levee board should have and to fix the limit of salaries which could be paid them. The attack upon these laws being that they are invasions and negations of powers granted to the levee board by the constitution, it becomes necessary to determine what are the effects of the constitutional provisions with reference to the levee board, its powers and duties.

The only purpose of putting a provision in a constitution is to remove the subject-matter dealt with from the domain of legislative action. This follows from the consideration that in the absence of a constitution or constitutional limitation, all governmental power is resident in the people and the legislature being the representatives of the people and agents through whom the people act, it follows that all power in the absence of a constitution or constitutional limitation is resident in the legislature.

As said by Justice JOHNSON in *Livingston* v. *Moore* (7 Peters 469) : "The power existing in every body politic is an absolute despotism. In constituting a government, the body politic distributes that power as it pleases and in the quantity it pleases and imposes what checks it pleases upon its public functionaries."

It has been held that where a legislative power is undefined, it includes judicial and executive attributes which is but another way of stating the same thing. *Cooper* v. *Tellfair,* 4 Dall. 14.

Since all governmental power is resident in the legislature in the absence of a constitution, it would appear that the necessary effect of the adoption of a constitution by a people and the delegation of governmental authority and power to functionaries other than the legislature would be to deprive the legislature of the powers committed to others. It would therefore seem to follow that the only purpose for delegating by a constitution governmental power to some functionary other than the legislature would be to deprive the legislature of it. If this be a sound

rule of constitutional construction, it would follow that the only purpose for putting the provisions relative to the levee board in the constitution of the state was to remove the subject-matters intended to be governed from the domain of legislative action. In other words, these provisions were intended and had the effect of placing the powers conferred upon the levee board beyond the domain of legislative annulment, interference or impairment. It would seem that this result follows from the principles stated and also from the rule that, in the absence of language clearly indicating a contrary intention, the conferring of power by the constitution on one governmental functionary is deemed to exclude the exercise of it by another.

The apportionment of governmental power among different functionaries is the outstanding characteristic and peculiar genius of American constitutional government, the evident purpose being to render tyranny impossible and to preserve the liberties of the citizen from official abuse by providing a system of checks and balances. The apportionment by the people of governmental power upon constitutional functionaries imposes upon each the duty of exercising its own powers for itself. And for the same reason that the powers cannot be delegated, they cannot be usurped. *Reelfoot Lake Levee District* v. *Dawson,* 97 Tenn. 151, 34 L. R. A., 725; *Kilbourn v. Thompson,* 103 U. S. 168.

As far as this phase of the question at bar is concerned, it would appear that the question resolves itself into the inquiry as to what powers were given the levee board and whether the laws in question amount to a deprivation, annulment or unwarranted interference by the legislature. In passing upon this question, it would seem to be proper to take into consideration not only the language of the constitution but also the purposes and objects sought to be attained; and it would appear that the constitutional provisions should receive that construction consistent with

their terms which will promote these objects since their accomplishment was the reason for the adoption of the constitutional provisions. *Rhode Island* v. *Mass.,* 12 Peters 657; *Jarrolt* v. *Moberly,* 103 U. S. 580; *Brigg* v. *Pennsylvania,* 16 Peters 539; *Legal Tender cases,* 12 Wall. 457; *Adams* v. *Y. & M. V. R. R. Co.,* 77 Miss. 194.

It seems to be also true that the court will look to the history of the times as an aid to interpretation. *Slaughterhouse cases,* 16 Wall. 36; *Strauder* v. *West Va.,* 100 U. S. 303; *Maxwell* v. *Dow,* 176 U. S. 581.

The court will also test the constitutionality of the acts in question not only by what has been done under them in the particular instance but also by what may be done under and by virtue of the authority claimed or conferred. *Montana Co.* v. *St. Louis Min. & Mil. Co.,* 152 U. S. 160; *In re Lambert,* 134 Cal. 626, 86 Am. St. Rep. 296; *Hathorn* v. *Natural Carbonic Gas Co.,* 194 N. Y. 326, 128 Am. St. Rep. 555; *State* v. *Williams,* 146 N. C. 618, 17 L. R. A. (N. S.) 299); *Eubank* v. *Richmond,* 226 U. S. 137.

*R. P. Mitchell* and *Williams & Schmitt,* for appellee and cross-appellants.

One of the elementary rules of constitutional law is that, in the absence of constitutional inhibition, the powers of the legislature are practically despotic. The constitution, as adopted by our people, stands at the top of our statute law, with the statutes and acts of the legislature coming next; in the event an act of the legislature cannot, by clean, clear, unequivocal argument, deduced from the language of the constitution and the statute in question taken together, be shown to be contrary to the organic law, it must stand and be enforced by the courts, and the only remedy for the evils following therefrom is by an appeal to the patriotism of the people through the legislature, or at the ballot box. *State* v. *Henry,* 87 Miss. 125, 50 So. 152.

These general rules will be found to have been laid down and approved in all of the following cases: *Kemmler* v.

*Durston* (N. Y.), 16 A. S. R. 859 & notes; *Stevenson* v. *Colgan* (Cal.), 25 A. S. R. 230; *Conlin* v. *Board of Supervisors* (Cal.), 37 A. S. R. 17; *Bourn* v. *Hart* (Cal.), A. S. R. 203; 6 Ruling Case Law, par. 111 and 114; 12 Corpus Juris, pages 786 and 787; *State* v. *Layton* (Mo.), 62 L. R. A. 163; 83 A. S. R. 487 & cases; *Pittsburg R. Co.* v. *State.* (Ind.), 102 N. E. 25; L. R. A. 1915, 458, and cases cited; 12 Corpus Juris, page 887, par. 390, and note 38, Miss. cases; *Johnson* v. *Elliott.* (Tex.), 168 S. W. 968, and citations; *Consumers' League* v. *Colo., etc., R. R. Co.* (Colo.), Ann. Cas. 1914A, 1158, citing therein and approving *In Re N. Y. Elevated R. R. Co.*, 70 N. Y. 327; *State* v. *Cantwell* (Mo.), 78 S. W. 569 (affirmed in 199 U. S. 602); *Ex Parte Kair* (Nev.), 80 Pac. 463; 113 A. S. R. 817; *Powell* v. *Penn*, 127 U. S. 678; *Erie & N. E. R. R. Co.* v. *Miller*, 19 W. Va. 409; *Patterson* v. *State* (Okla.), 124 Pac. 942; *State* v. *Somerville* (Wash.), 122 Pac. 324; *Barker* v. *State Fish Com.* (Wash.), 152 Pac. 537; *State* v. *Archibald* (Wis.), 131 N. W. 895; *State* v. *Eberhard* (Wis.), 147; *Martin* v. *Dix*, 52 Miss. 53.

Defendants claim that these acts are unconstitutional and void because they are unreasonable, and an encroachment upon the powers granted the levee board by the constitution. Then, that being the case, the only thing to be ascertained is; what powers were delegated to this board by the constitution? and do these acts of the legislature conflict with those powers? Certainly evidence will not assist us in interpreting the language of the constitution, and these are absolutely the only questions to be answered in a decision of this law suit. An examination of all the authorities cited by defendants will show that none of them are in point.

We submit, then, no question of police power entering into the act, chapter 169, no contract rights being taken away, no unlawful discrimination being made against the levee board, and no property attempted to be taken without due process of law, there is absolutely no question in this

case where evidence would do more than cast a doubt upon the minds of the court, which doubt has already been wiped away by the legislature in passing the law.

We readily admit the soundness of the principles of law upon this point cited by counsel for defendants, and recognize the distinction made by them in their brief, but it seems that they have adopted the line of decisions setting out the exceptions to the general rule, which do not apply to the case at bar; for, as stated in different languages above, the only question to be disposed of here is whether, or not, chapter 196 conflicts with constitutional powers of the defendants, and this can only be settled by an interpretation of the meaning and intent of the constitution through the language used therein, and an application of this interpretation to the law under discussion. .

It would necessarily prolong this brief to too great a length to take up and discuss each case cited by defendants in behalf of their contention, consequently will only take up two or three of them and state what the decisions therein were based on: *Yick Wo case;* discrimination against Chinese Laundry; *Pittsburg, etc. v. Hartford case;* discrimination by municipal corporation making roads put certain light and crossings; *Chi, etc.* v. *Welman case;* rate case, due process of law; *Adams Ex. Co. case;* another question of rates; *Cook County* v. *School case;* tried under a self-executing section of Illinois constitution, the same as if under an act of the legislature; evidence, of course, necessary to prove a violation of this statute; *Martin* v. *Texas case;* discrimination against negro juror in violation of Fourteenth Amendment, Federal Constitution; *Franklyn* v. *S. C. case;* discrimination against negro juror; *Gold Mine case;* question of negligence of co-employer in suit for damages by an employee; *Dobbins* v. *Los Angeles case;* an arbitrary interference with private property rights by municipal ordinance under the guise of police regulation. Evidence necessary in that case to show wherein the interference was; and so on, all patently exceptions to the

rule controlling this case. By no stretch of the imagination could the case at bar be placed in the same column with those cited by defendants.

Consequently, this case, coming under the general and universal rule that evidence is not admissible to aid in deciding the constitutionality of a law, I submit that the learned chancellor erred in admitting the evidence of all the witnesses, as well as all exhibits.

In taking up the question of the constitutionality of the two laws attacked in this case—chapters 169 and 170, of the Laws of Mississippi, 1922, it becomes necessary to consider the general rules governing construction of statutes, when we find that the courts have nothing to do with the reasonableness, expediency, wisdom, necessity or harshness of statutes. The duty of the courts is to take the statute, construe its meaning according to the language, and then ascertain if it conflicts with any provision, or provisions, of the organic law. If it does the statute must go, but if it does not it must stand and be enforced. 6 Ruling Case Law, Pars. 105 and 107; *Martin* v. *Dix,* 52 Miss. 53; *Cole* v. *Humphries,* 78 Miss. 169; 28 So. 808; *Cox* v. *Wallace,* 100 Miss. 525, 56 So. 461; *Darnell Lbr. Co.* v. *Johnston,* 109 Miss. 570, 68 So. 780; *University* v. *Waugh,* 105 Miss. 623, 62 So. 827; *State* v. *Newman Lbr. Co.,* 102 Miss. 802, 59 So. 923; *Bob* v. *Levee Board,* 92 Miss. 792, 46 So. 819; *Flynt* v. *Stone Tracey Co.,* 220 U. S. 107; Ann. Cas. 1912B 1312; part of the opinion on page 167 of U. S. and page 1324, Ann. Cas., and cases cited therein; School Corp. v. *Heiney* (Ind.), 98 N. E. 623; 43 L. R. A. (N. S.) 1023, and cases cited; *State* v. *Bolden* (La.), 31 So. 393; 90 A. S. R. 280 & Note, p. 284; *State* v. *Mayo* (Me.), 75 Atl. 295; 26 L. R. A. (N. S.) 502 & cases cited; *Flynt Power Steam Boat Co.* v. *Foster* (Ga.), 48 Am. Dec. 248; *State* v. *Griffin* (N. H.), 76 A. S. R. 139; *Ex parte Princha* (Fla.), 70 So. 406; citing *Moadin* v. *Bryan* (Fla.), 39 So. 929, and many others; *C'wealth* v. *Herr* (Pa.), Ann. Cas. 1912A 422; wherein it was held "Nothing but a clear violation of the

constitution makes an act void; *Ex parte Mode* (Tex.), Ann.
Cas. 1918E, 845; *Hadfield* v. *Lunden* (Wash.), Ann Cas.
1918E 942; 12 Corpus Juris, page 754, par 174; *Commonwealth* v. *Moir* (Pa.), 49 Atl. 351; 85 A. S. R. 801. In this
case will be found a very broad and exhaustive discussion
of the rules of constitutional construction. Also our court,
in the case of *Henry* v. *State,* 87 Miss. 125, 40 So. 152, has
very clearly laid down these general rules of construc-
tion.

Also see *Shepherd* v. *Dowling,* 28 So. 791; 85 A. S. R.
68 & citations; *Martin* v. *Dix, supra; Commonwealth* v.
*Herr, supra; Ex parte Mode, supra; Hadfield* v. *Lunden,
supra; Peninsula Casualty Co.* v. *State* (Fla.), 67 So. 165;
*Florida Ins. Co.* v. *State* (Fla.), 67 So. 169; *G. S. Johnson
Co.* v. *Bloskey* (Ill.), Ann. Cas. 1915C, 411; *Townsend* v.
*State* (Ind.), 62 A. S. R. 777, note 1, and cases; *State* v.
*Falkenstein* (Wash.), 177 Pac. 254; *Johnson* v. *Elliott*
(Tex.), 168 S. W. 968.

Another rule of construction of statutes as to their con-
stitutionality is, that all laws are presumed to be valid,
and if, after interpretation of the meaning of it, the court
cannot, with certainty and particularity, point out the
specific section of the organic law with which it conflicts,
but still entertains a reasonable and well-founded doubt
as to its validity, then that doubt must be resolved in
favor of the constitutionality of the law; also, if the acts
in question are susceptible of two constructions, one of
which will render it constitutional, the constitutional con-
struction must be adopted: *Ex parte Mode, supra; State* v.
*Henry, supra; Beck* v. *Allen,* 58 Miss. 143; *Burnham* v.
*Summer,* 50 Miss. 517; *Virden* v. *Bowers,* 55 Miss. 1; *People*
v. *McBride* (Ill.), 84 N. E. 865; 123 A. S. R. 82; *Hart* v.
*State,* 87 Miss. 177, 39 So. 523; *Dantzler Lbr. Co.* v. *State*
(Miss.), 53 So. 1; *Natchez, etc. R. Co.* v. *Crawford,* 99 Miss.
697, 55 So. 596.

And still another rule of construction is that statutes
and constitutional provisions must be construed together

and so harmonized as to give effect to both when this can consistently be done. 12 Corpus Juris, page 787, par. 220 (5), and note 99; again, words in the constitution are to be taken in their plain and obvious sense, and when this sense is clear no resort can be had to construction. *Smith* v. *Half Acre* (Miss.), 6 H. 582; *Brien* v. *Williamson* (Miss.), 7 H. 14; *State* v. *Fragiacomo,* 71 Miss. 417, 15 So. 798.

Coming now to the interpretation of the sections of the constitution applicable to the defendants, and under which they claim autonomous and discretionary powers, I think it would throw a little light upon the subject if we go back and look at the history of this board, its origin and original powers before the adoption of the constitution of 1890.

As early as 1811, even before Mississippi became a state, the territorial government took steps to build levees along the Mississippi River for the protection of the lands of the delta, and, in 1839, by the acts of that year, the legislature formed a board for the purpose of directing and overseeing the building of levees along the river, this delegation of power going to what was then known as the board of police, of each county, along the delta section. During all this time, up until the adoption of the constitution of 1890, the legislature was recognized as the absolute authority in matters pertaining to the levee along the river, it made and repealed laws under which these boards operated at will, even going so far as to abolish the board of district No. 1, as was done by the Act of 1876, page 174. This right of the legislature was upheld in the case of *Shotwell* v. *Railway Co.,* 69 Miss. 541, 11 So. 455.

Then, by the Acts of 1884, chapter 168, page 140, the present levee boards were incorporated, and took charge of the levees in their respective districts, or rather the Yazoo-Mississippi district. An examination of this act and its amendments will show that section 1 sets out the purpose of this act to protect all the property in this district

from loss and destruction  . . .  by erecting and main-
taining efficient levees as hereinafter provided by and
through the agency of the levee commissioners herein in-
corporated.

From sections 4, 12 and 27, comes all the powers of the
levee board with reference to contracts and contracting
then in force, saving and excepting such amendments and
new acts as may have been passed in the interim to date.
In 1890 the present constitution of the state was adopted,
and therein was inserted a chapter, or article, on levees,
beginning with section 227 and ending with section 239.
*Hagar* v. *Reclamation District,* 111 U. S. 701; 28 (L. Ed.)
569; *Nugent* v. *Levee Commissioners,* 58 Miss. 197.

Now, for the purpose of further looking into the intent
of the constitution in regard to this section, let's see what
the courts have said in regard to the meaning of the word
"supervision." Webster's International Dictionery says
"Supervision" means "The act of overseeking, inspection or
superintendence." *State* v. *F. E. & M. R. R. Co.* (Neb.),
35 N. W. 118; *Van Tongeran* v. *Hefferman.* (Dak.), 38 N.
W. 52.

I submit that this section means only what it says in
the ordinary language it uses, to-wit; that this board shall
have supervision, that is oversight, of the levees themselves
and over nothing further, certainly not the financial af-
fairs of the districts, nor the internal administration there-
of. The constitution plainly shows that this part of the
business was intended to be left in the sound discretion
of the people, through their representative, the legislature.
The people organized and incorporated the defendants,
provide them with the money with which to build the levees,
authorize and empower them in section 4 of the Acts of
1884, and not by any section of the constitution, to build,
maintain and repair the levees, and then give to them the
supervision thereof, but not the supervision, or control,
of the internal affairs of the board.

There is another reason why this section of the consti-
tution does not grant to defendants the wide discretionary

powers claimed by them in regard to the affairs of the levee board, and that is the fact that this section, giving to defendants the supervision of the levees, is not self executing. A self executing section of a constitution is one that needs no additional legislation, and none was contemplated, to put it into effect. 12 Corpus Juris, page 730, par. 107 (2), note 55; *Commonwealth* v. *Moir,* 85 A. S. R. 801; *Ham* v. *Levee Board.* The case at bar is not one curtailing these powers, but is an effort by the people to regulate the expenditure of their money by this governmental agency.

I agree thoroughly with counsel that this board has the power to build, repair, and maintain the levees, that power having been given them by the legislature in 1884 and the constitution recognized it, making it impossible for the legislature to abolish it, or take away the backbone of the board—the power of eminent domain, but the constitution did as stated by counsel in his brief, give them the power to contract, sue or be sued, or of taxation, thereby again bringing into play in support of our contention the rule of limitation reserving this power in the legislature.

Right here I wish to call attention to paragraph 3, page 17, of brief of counsel, wherein he states that the mentioning of certain powers in certain sections of the constitution argues that no such powers were given to the legislature. These clauses were placed in these sections for the simple reason that as sections 233 and 235 would have been practically self executing without the qualifying clause, in order to prevent the abuse of the powers conferred by these sections, the legislature, in their wisdom, realized the necessity of retaining control of those powers.

Another significant thing about this particular section, in view of the contention by defendants that they have such vast and comprehensive discretionary powers under the organized law, is the fact that this section requires of the defendants, that, when they want anything or wish to have any matters remedied, they must call them to the

attention of the legislature, petition the legislature so to speak, like a child asking its father for candy, clearly showing the recognition of the power of the legislature over them, and the administration of their affairs. Could anything be plainer?

This legislature herein has not granted any constitutional power to the defendants whatsoever, save that of fixing the acreage tax. In other words it is written all over the sections of our constitution, far plainer than it could have been done in words, that this board is nothing at all but the creature of the legislature except in the matters reserved therein. Again the rule: all powers not prohibited by constitution inherent in the legislature. Is there any discretionary power to be found in this section granted to the defendants? I cannot find it if there is. On the contrary, the limits of the authority of the defendants upon this question of taxation are prescribed, leaving the whole vast field beyond in the hands of the legislature.

We come now to consideration of the provisions of chapter 170 of the Laws of Mississippi, 1922, dealing with the employment of labor by the defendants, prescribing conditions under which these contracts may be entered into by the defendants, and also prescribing the number of officers and employees of the defendants and their salaries.

As this argument, in discussing the provisions of chapter 169, has practically covered the ground in reference to section 2, of this act, providing for labor, etc., in cases of emergency and as the arguments in reference thereto apply equally to this section of chapter 170, we do not deem it necessary to further touch this point. Suffice it to say that, as the legislature is presumed to have investigated the requirements of the defendants fully before passing this law, and found that the officers therein named are sufficient to allow this board to properly function, it is not within the province of this court, or any other, to question the wisdom of their decisions, nor the necessity, nor the expediency, nor the policy. As the constitution is

130 Miss—12

silent upon the question of all officers and employees of this board save the commissioners, then, it is within the authority of the legislature to say what other officers and employees are necessary for the proper functioning of the board.

We come now to the question under this law—Chapter 170—as to whether or not, it impairs the obligation of the contracts entered into by this board with the four officers named in the pleadings in this cause. In all of these positions is there a part of sovereignty? The tenure of their office is governed by the term of the commissioners who compose the board under which they work. Now, in view of these conclusions we will see what some of the decisions say in regard to what is an officer; Black's Law Dictionary (2 Ed.), defines him; *People* v. *Buffalo,* 11 N. Y. Sup. 314, 57 Hun. 577. Employees are usually considered to be laborers and servants, and those occupying inferior positions. *People* v. *Board of Police,* 75 N. Y. 38; *White* v. *City Alameda* (Cal.), 56 Pac. 795.

Now, under these recognized definitions, can the officers named in the pleadings in this case be considered employees? We cannot see that their employments, or duties, are like unto those of servants, laborers, or workmen, nor can their duties be said to be of a very inferior nature. Each and every one of them must have some peculiar qualifications to fill them, there are responsibilities on their shoulders that would not be on those of employees in the true sense of the term; as before stated, they exercise a degree of sovereignty that could not be exercised if they were employees.

However, granting for the sake of argument, these men are employees, still there is no obligation of their contracts, for the simple reason that this is a public, municipal corporation, organized and incorporated as an agency of the government, and, as such, the legislature has the absolute right and authority to regulate and control it in its internal affairs, and persons contracting with it do so

subject to this governmental power in so far as the contracts are upon governmental, as distinguished from private, business.   Black Const. Law, pages 613 and 620, and cases therein cited.   As I see this point under the laws of the state existing before the passage of this act, the defendants, had the right to make the contracts with the named officers, but, as the defendants are members of a subordinate governmental agency, a municipal corporation organized and incorporated for the performance of a public duty, with no stock, no assets but the property of the people, no private interests to be subserved, or interfered with, all rights, powers, privileges and franchises granted to them are held subject to legislative modification and control in absence of organic law; consequently, the officers employed, taking positions in this public corporation, operated for the purpose aforesaid, and their duties and obligations being of a public as distinguished from a private, nature they take and hold them subject to the will of the legislature.   *Dartmouth College Case,* 4 Wheat. 629; 12 Corpus Juris, page 1003, par. 623, and citations; *State* v. *Hocker,* 63 A. S. R. 174; *Shelby* v. *Alcorn,* 36 Miss. 273, and *Hill* v. *Boyland,* 50 Miss. 618.

Briefly stated then, even if these men are only employees of the levee board, still, in view of the fact that this board is a *quasi*-public corporation, with no corporate stock and franchise, no private property or interest, but purely and simply an agent, arm or subdivision of the state of Mississippi, then persons, or corporations, contracting with them in a public, as distinguished from a private, capacity, for the performance of a public duty and obligation imposed upon the defendants by law, the legislature, in the absence of constitutional inhibition, has ample power and authority to pass laws regulating them and their proceddure, and such persons or corporations, so contracting with them, do so subject to this power of the legislature.

*Sillers, Clark & Sillers, Amicus Curiae.*

Chapters 169 and 170, Beneficent Extension of Levee Board's Power are constitutional. *Postal Telegraph & Cable Co.* v. *Robertson,* 76 So. 562, 116 Miss. 204; *Ham* v. *Levee Commissioners,* 83 Miss. 552, 35 So. 943; *Bobo* v. *Levee Commissioners,* 92 Miss. 792, at page 813, 46 So. 810; *Benton County* v. *Patrick,* 54 Miss. 240; *Dixon* v. *Greene County,* 76 Miss. 809; *Benton County* v. *Patrick,* 54 Miss. 240; *Groton Co.* v. *Warren County,* 80 Miss. 218; *Smith County* v. *Mangum,* 89 So. 914; *Supervisors* v. *Arrighi,* 54 Miss. 671; *Nash* v. *St. Paul,* 8 Minn. 181, s. c. 11 Minn. 74; *People* v. *Flagg,* 17 N. Y. 589; *Brady* v. *New York,* 20 N. Y. 312; *Hague* v. *Philadelphia,* 48 Penn. St. 528; 2 C. J. 685; *Mayer* v. *McClure,* 36 Miss. 389; *Alcorn* v. *Hamer,* 38 Miss. 652, 38 Miss. 749; *Montgomery* v. *State,* 65 So. 575, 107 Miss. 518, 23 Am. & Eng. Enc. of Law, 366; *New Orleans, etc., Railroad Co.* v. *State,* 70 So. 355, 110 Miss. 290; *Brown* v. *Christmas,* 88 So. 881, 126 Miss. 358; *Smith County* v. *Mangum,* 89 So. 914; *Crump* v. *Board of Supervisors of Colfax County,* 52 Miss. 107; *Board of Supervisors of Benton County* v. *Patrick et al.,* 54 Miss. 240; *Bridges & Hill* v. *Board of Supervisors of Clay County,* 58 Miss. 817; *Dixon* v. *Greene County,* 76 Miss. 794, 25 So. 665; *Groton Co.* v. *Warren County,* 80 Miss. 214, 31 So. 711; *Marion County* v. *Foxworth,* 83 Miss. 677, 36 So. 36; *Gilchrist-Fordney Co.* v. *Keyes,* 113 Miss. 742, 74 So. 699; *Lamar County* v. *Tally & Mayson,* 116 Miss. 588, 77 So. 299; *Levee Commissioners* v. *Brooks,* 76 Miss. 640, 25 So. 358; *Wallace* v. *Tucker,* 104 Miss. 94, 61 So. 163; *Adams* v. *Bank,* 103 Miss. 753, 60 So. 770; *Hinton* v. *Perry County,* 84 Miss. 546, 36 So. 565; *Craft* v. *DeSoto County,* 79 Miss. 565, 31 So. 210; *Bolivar County* v. *Coleman,* 71 Miss. 835, 15 So. 107; *Laurel* v. *Rowell,* 84 Miss. 440, 36 So. 543; *Nash* v. *St. Paul,* 8 Minn. 181, s. c. 11 Minn. 174; *People* v. *Flagg* 17 N. Y. 589; *Brady* v. *New York,* 20 N. Y. 312; *Hague* v. *Philadelphia,* 48 Penn. St. 528; *Bank* v. *Duncan,* 52 Miss. 746-749; *Beck* v. *Allen,* 58 Miss. 143; *Beck* v. *Allen,* 58 Miss. 169; *Peterson* v. *Kittredge,* 65 Miss. 33; *Bank* v. *Worrell,*

67 Miss. 57; *Monroe County* v. *Strong,* 78 Miss. 565; *Board* v. *Klein,* 51 Miss. 807; *Gamble* v. *Witty,* 55 Miss. 26; *Rorrenberry* v. *Yalobusha County,* 67 Miss. 740; *Thomas* v. *Board of Supervisors,* 53 Mo. 585, 98 Miss. 232; *Paxton* v. *Baum,* 59 Miss. 535; *Sullivan* v. *Board of Supervisors,* 58 Miss. 796; *Seal* v. *Donnelly,* 60 Miss. 662; *Montjoy* v. *Pillow,* 64 Miss. 709. See, also, *McClearly* v. *Swayze,* 65 Miss. 352; *DeSoto County* v. *Jones,* 60 So. 655, 103 Miss 602; *Dixon* v. *Board of Public Contracts,* 117 Miss. 83, 77 So. 908; *Martin* v. *Dix,* 52 Miss. 62; *State ex rel.* v. *Levee Com'rs,* 51 So. 211.

No absolute right to contract in the levee board contrary to law. 12 C. J. 765; *State* v. *Leech,* 33 N. S. 522. Here this chief engineer was not a constitutional officer. With deference, *State* v. *Wheatley,* 74 So. 427, 113 Miss. 555, does not contravene in any way this proposition. See as especially controlling. *Braxton County* v. *West Virginia,* 208 U. S. 192; *Stewart* v. *Kansas City,* 239 U. S. 14; *Southern, etc., Co.* v. *Chariton,* 255 U. S. 546. The legislative will is supreme in the exercise of the police power. *Hunt* v. *Wright,* 70 Miss. 298; *State* v. *Jackson,* 81 So. —, 119 Miss. 727; *Ex Parte Wren,* 63 Miss. 512; *Mayor* v. *State,* 102 Miss. 663; *State* v. *Warner,* opinion B. I, 441; *Colbert* v. *State,* 86 Miss. 775; *State* v. *Elks,* 69 Miss. 897; *Sullivan* v. *Ammons,* 48 So. 244 *State* v. *Fragiacoma,* 70 Miss. 802; *State* v. *Hill,* 70 Miss. 110; *Swann* v. *Buck,* 40 Miss. 307; *Meyers* v. *Marshall County,* 55 Miss. 347; *Mobile & Ohio R. R. Co.* v. *Weiner,* 49 Miss. 725; *Swann* v. *Buck,* 40 Miss. 270; *Railroad* v. *Weiner,* 49 Miss. 726; *Vicksburg* v. *Insurance Company,* 72 Miss. 70; *Railroad* v. *Weiner,* 49 Miss. 725; *French* v. *State,* 52 Miss. 763; *Clay County* v. *Chickasaw County,* 64 Miss. 542; Sedgwick on Con. of State, and Const. Law, 365, 366, and note; *M. & O. R. R. Co.* v. *Weiner,* 49 Miss. 725; *Loramie County* v. *Albany County,* 92 U. S. 207; *Board of Supervisors of Chickasaw County* v. *Board of Supervisors of Sumner County,* 58 Miss. 619; Dill on Mun. Corp. sec. 126, seq.; *Ascher* v. *Moyse,* 101 Miss. 36.

It is to be noted that the legislature, vested by the constitution with plenary power, has seen fit here to pass this act, making of these persons officers, with fixed duties, and no contract could be entered into by those subject to such regulations whereby the right to regulate would be precluded from being exercised. It is fundamental that the servant is not greater than his lord, and yet in this cause the servant has by a contract assumed to attempt to deprive his lord of those things that appertain unto sovereignty. Therein he is foreordained to failure. This is fundamental. Thus to appoint requires the retention of the power to remove as an incident. *Newsom* v. *Cocke,* 44 Miss. 352.

Wherefore, with deference, it is submitted that both of these laws are constitutional, and as such should be so adjudged.

HOLDEN, J., delivered the opinion of the court.

This is an injunction suit filed by M. H. Ellis and others as resident taxpayers, against L. C. Franklin and others, who constitute the board of levee commissioners for the Yazoo-Mississippi Delta levee district chartered by chapter 168, Laws of 1884, seeking to enjoin the levee board from paying the salaries of certain employees of the board, namely, Major T. G. Dabney, consulting engineer, B. R. Bagley, superintendent of maintenance, Lee Trimble, foreman of maintenance, and C. S. Longino, paymaster. These employees were employed by the board for a term of two years by contract at certain salaries, to wit, four thousand five hundred dollars per annum for the said Dabney, two thousand four hundred dollars per annum, for Bagley, one thousand three hundred and eighty dollars per annum for the said Trimble, and one thousand eight hundred dollars per annum for the said Longino; the contract of employment extending into the year of 1924.

The basis of the complaint against the payment of the salaries of these employees is that the act of the Legisla-

ture of 1922, chapter 170, passed March 31, 1922, expressly provides for the number and character of employees of the board, and regulates the salaries to be paid to them, and that the payment by the board of the salaries to the employees named above would be in violation of said act of the legislature.

The bill further seeks to enjoin the board from paying out large sums of money for certain quantities of materials and labor contracted for and used in preventing a breach of the levee line at Devil's Hole in Tunica county during the recent high water of the Mississippi river, because the contracts for said materials and labor were made by the board in violation of, and without first complying with, chapters 169 and 170 of the Acts of 1922.

Without setting out the entire legislative acts involved we shall refer to the substance of the pertinent parts applicable to the case. Chapter 169 provides that, except in cases of emergency to be mentioned later, the board is required to let all contracts for material and work in connection with the maintenance or repair of the levees by advertisement for three weeks in a newspaper, and the board shall receive bids for said work and award the contract to the lowest responsible bidder.

It is also further provided in the act that—"When a grave emergency caused by high water or caving banks shall exist along the levee line of said district and said emergency, its cause, and probable effect, shall be certified to said board of levee commissioners by the chief engineer of said levee district; and said levee board of commissioners shall find after personal investigation and inspection that said emergency actually exists; and the findings of said board of levee commissioners, together with the certificate of the chief engineer of said levee district as to said emergency, shall be placed of record on the minutes and proceedings of said board of commissioners either at the regular or special meeting of said board or in vacation; the said board of commissioners may then, without

advertising the same as above provided, proceed to let any necessary contract for emergency work."

Chapter 170 provides that the board shall have a president, a chief engineer, an assistant chief engineer, an attorney or firm of attorneys, a pump engineer, a secretary and treasurer, a caretaker, and such other clerical and stenographic help as needed, and such common laborers as may be deemed necessary to carry on the work of the board, but that said board shall have no other paid officers or employees, except in cases of emergency. The act then prescribes that the salary or compensation of the officers and employees shall be fixed by the board within certain limitations, which we think is unnecessary to set out.

Thus it will be observed the bill is for the purpose of permanently restraining the board from paying the salaries of the employees hired by contract with the board prior to the passage of the said chapter 170, because such contract of employment is contrary to the terms of the act.

And second, the suit is to prevent the board from paying for the work done or materials purchased by the board, because the board failed to comply with said chapter 169, in failing to advertise and let to lowest bidder, or declaring an emergency situation.

The answer and defense of the levee board, in short, is that the board had already contracted with the employees for a term of two years at certain and fixed compensation, and chapter 170 is void as an impairment of the obligation of contract, because it was enacted after the contract of employment was made by the board, and void as an unreasonable interference with the exercise of the constitutional power of the levee commissioners in efficiently carrying on the necessary work to preserve the levee system.

And second, the board admits that it contracted for work and material used in repairing and maintaining the levee line without first complying with said chapter 169, but wholly disregarded the act for the reason that the work

to be performed and the materials necessary thereto were needed and used in an emergency in an effort to preserve the levee against flood waters and protect the lives and property of the levee district; that the occasion being one of emergency the board could not have efficiently and successfully functioned if it had waited and complied with the requirements of the act.

The levee board therefore contends that said chapter 169 is unconstitutional and void because it impairs or destroys the efficient functioning of the board in cases of emergency requiring quick action to prevent a breaking of the levee line. It is urged that the levee board is created by article 11 of the state constitution, and that section 232 thereof provides that "the commissioners of said levee districts shall have supervision of the erection, repair, and maintenance of the levees in their respective districts," which power so granted cannot be unreasonably restricted so as to impair its efficient exercise by the levee commissioners.

The position taken by the levee board was attempted to be sustained by proof before the chancellor, showing that the requirements of the act are such that the board could not efficiently exercise its constitutional power of supervision of the maintenance and repair of the levees in cases of emergency, because of the delay incident to the requirements of the act before work by the board could be commenced. The testimony was admitted over the objection of the appellee; and we think it was competent, and shall consider it in reaching our conclusions in the case.

The lower court decreed that said chapter 169 was unconstitutional because it was unreasonable and impaired the proper functioning of the board in cases of emergency, and thus restricted or destroyed the exercise of the full supervising power of the board as granted by the Constitution. And, second, the chancellor held that said chapter 170 was constitutional as a regulation, and not an impairment of the obligation of contract.

We shall consider and discuss chapter 169 first. This act was intended to regulate the manner and method of contracting for labor and material used in the erection, repair, and maintenance of the levees, by requiring that such contracts be let to the lowest responsible bidder after due public notice. But it also provides that when a grave emergency, caused by high water or caving banks shall arise, and this condition is certified by the chief engineer and the board of commissioners and spread upon the minutes of the board, either at a regular or special meeting, or in vacation, then the board may proceed to let any necessary contract for the emergency work without the delay of advertising for public bids.

We have fully examined the evidence in this record as to what is a grave emergency, and what should be done in such cases, and how soon or quick it should necessarily be done in order to successfully prevent a breach in the levee and overcome the danger of one. We also judicially know some things of common knowledge that are material to the issue.

We shall not discuss in detail the testimony offered by the board to sustain its view, but shall only point out that the testimony convinces us the requirements of the legislative act are reasonable and can in any case be complied with and not impair the efficient functioning of the levee board. It appears from the record the levee commissioners and other officers could be gotten together within a few hours, and the finding of the commissioners and the certificate of the chief engineer could be recorded upon the minutes of the board within a short while.

This may be done in vacation, which means that in cases of emergency the board may record the emergency facts at any time, and perhaps at any place in the district, and then proceed without delay.

The testimony offered by the levee board shows that the grave emergency situation can be certified, confirmed, and spread upon the minutes within a short time after it is discovered by the chief engineer or his associates. One

of the witnesses testified that the procedure required under the act could be carried out in less than one-half of a day, and that the emergency could be properly met and the danger overcome if operations by the board could be commenced within a day after the discovery of the danger.

It does not appear from this record that any emergency arose in this case, or may arise, which could have been successfully dealt with in securing labor and material, considering that already on hand, under the act, if the authority to contract for it could be exercised within twelve hours, or even longer, after the emergency condition is found by the chief engineer.

We are of opinion that chapter 169 is constitutional as a reasonable regulation of the administration of the affairs of the board. The legislature has the right to prescribe, alter, or change at its discretion the procedure and method of operation of the board, so long as it does not infringe upon the proper and efficient exercise of the power granted the levee commissioners by the constitution. The legislative act here involved merely regulates the procedure and method of the functioning of the board, and may be considered as an additional regulation or an amendment to the charter under chapter 168, Laws of 1884. *Bobo* v. *Board of Levee Commissioners,* 92 Miss. 792, 46 So. 819.

Coming to the second proposition involving the validity of chapter 170, Acts of 1922, after a careful consideration we have reached the conclusion the act is valid as a reasonable regulation of the administration of the affairs of the levee board, and does not impair its proper functioning, and also reasonable as to the number and character of employees and their compensation. But the contracts between the levee board and its employees which were made and entered into before the passage of the act are not affected by the act because of the constitutional prohibition against impairment of obligation of contract.

We are satisfied the contracts of employment for a term of two years, entered into between the board and the em-

ployees named in the bill of complaint herein, is a valid contract which cannot be annulled by the subsequent act of the legislature.  *Hall* v. *Wisconsin,* 103 U. S. 5, 26 L. Ed. 302.

The levee board was duly authorized to contract for the services for a term of two years, and having so contracted, and the services to be rendered being that of a mere employee employed to perform certain and specific private duties for a public agency, it was not a contract that could be annulled at the pleasure of the legislature.  Therefore the contract made with these employees prior to the legislative enactment is valid and binding.

In view of the conclusions announced above we decide that the lower court erred in holding that chapter 169 is void, and it was error to hold that the contract between the board and employees made prior to the passage of chapter 170 was void, and the upholding of the balance of chapter 170 as constitutional and valid was correct.  Therefore the decree is accordingly reversed and judgment entered here to meet the views expressed hereinabove.

*Reversed and judgment here.*