879 So.2d 493 (2004)
Jimmie McKNIGHT, Appellant
v.
MOUND BAYOU PUBLIC SCHOOL DISTRICT, Appellee.
No. 2003-CC-00484-COA.
Court of Appeals of Mississippi.
March 23, 2004.
Rehearing Denied June 8, 2004.
Certiorari Denied August 5, 2004.
*495 Preston Davis Rideout, Greenwood, attorney for appellant.
John Richard May, Sanford E. Knott, Jackson, attorneys for appellee.
Before SOUTHWICK, P.J., THOMAS and GRIFFIS, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. The Mound Bayou Public School District was placed under the supervision of the Mississippi Board of Education due to the district's financial problems. After that supervision began, Jimmie McKnight was informed that he would lose his position as an assistant principal in the next school year, though he had been notified prior to the beginning of state supervision that his contract would be renewed. We find that the commencement of supervision by the State Board of Education overrode the procedures otherwise available to employees on matters of contract renewal. Consequently, we affirm the lower court's upholding of the Mound Bayou District's decision.

FACTS
¶ 2. The plaintiff, Jimmie McKnight, was a twenty-eight-year long educator in the Mound Bayou Public School District. During the 2000-2001 school year, he was athletic director for the District and also served as assistant principal and head basketball coach at John F. Kennedy High School. The Mound Bayou School Board determined at a meeting on March 7, 2001, to offer McKnight a contract for the same duties at the same pay during the 2001-2002 year.
¶ 3. The District had for some time been suffering significant financial problems. The Mississippi Department of Education sent written notice to the District on March 16, 2001, just nine days after the school board meeting, that the District's sizeable budget deficit required the appointment of a financial adviser. State statutory authority for such an appointment exists, the requirements and effects of those statutes being central to this appeal. The adviser recommended that the assistant principal position be abolished.
¶ 4. McKnight was sent a letter on June 27, 2001, that of the three positions that he had held the previous year, the assistant principalship would no longer exist. He requested a hearing, at which proof of the dire financial condition of the District was introduced. The deficit was said to be about $300,000 for the fiscal year that ended in June 2000. The financial adviser found that elimination of personnel and positions was required as part of the remedy, that the two assistant principal posts cost the District about $42,000, and these positions were appropriate ones to eliminate.
¶ 5. The school board in September upheld the decision to eliminate the assistant principal position for the 2001-2002 school year. On appeal to chancery court, the decision was affirmed. McKnight continues his quest for judicial relief before this Court.

DISCUSSION
¶ 6. The fundamental issue in this suit is whether the appointment of a financial adviser for a financially troubled school district permits the reconsideration of personnel decisions after the date that usually is required for informing employees that their contracts will not be renewed. For *496 reasons that we will explain, we conclude that the District had the right upon the advice of the state-appointed financial adviser to withdraw the contract with McKnight.
¶ 7. The legislature has given the State Auditor discretion to audit the financial records of school districts. Miss.Code Ann. § 37-9-18 (Rev.2001). If as a result of the audit, "the State Auditor determines the existence of serious financial conditions in the district, the State Auditor shall immediately notify the State Board of Education;" the State Superintendent is then to order the affected district to "cease all expenditures until a financial advisor is appointed by the state superintendent." Id. These events occurred as to the Mound Bayou School District.
¶ 8. The financial adviser is the agent of the State Board of Education and must be a certified public accountant or a "qualified business officer." Id. The authority of the adviser is broad, commensurate with the financial problems that the adviser has been sent to rectify. Acting with the approval of the State Board of Education, the adviser performs these duties, among others:
(a) Approve or disapprove all expenditures and all financial obligations of the district;
(b) Ensure compliance with any statutes and State Board of Education rules or regulations concerning expenditures by school districts;
(c) Review salaries and the number of all district personnel and make recommendations to the local school board of any needed adjustments. Should such recommendations necessitate the reduction in local salary supplement, such recommended reductions shall be only to the extent which will result in the salaries being comparable to districts similarly situated, as determined by the State Board of Education. The local school board, in considering either a reduction in personnel or a reduction in local supplements, shall not be required to comply with the time limitations prescribed in Sections 37-9-15 and 37-9-105 and, further, shall not be required to comply with Sections 37-19-11 and 37-19-7(1) in regard to reducing local supplements and the number of personnel.
1997 Miss. Laws ch. 386, § 1, codified as Miss.Code Ann. § 37-9-18 (emphasis added).
¶ 9. The italicized language refers to timing requirements of other statutes. Those referenced statutes are relied upon by McKnight. One of the statutes provides that by February 15 of each year, recommendations will be made for the employment of assistant superintendents and principals. Those recommendations must be approved by the school board absent good reason to reject them. Miss.Code Ann. § 37-9-15 (Rev.2001). McKnight did not have either of those positions. The other referenced statute provides that if an employee of a school district is not to have his contract renewed, the employee shall be notified of that by the April 15 immediately preceding the new school year. Miss.Code Ann. § 37-9-105 (Rev.2001). That statute applied to McKnight's contract renewal.
¶ 10. This latter statute has been somewhat amended since the events that precipitated this suit. At the time that the financial adviser was named to oversee the finances of the Mound Bayou District, section 37-9-105 stated that a "school board acting on the recommendation of a school district financial adviser... shall not be required to comply with the time limitations prescribed in this section for recommending the reemployment of superintendents, assistant superintendents or principals." 1997 Miss. Laws ch. *497 386, § 2. The just-quoted language did not exempt from the time limitations all employees, but only the highest-level ones. The position of assistant principal such as McKnight held was not exempted in this statute, but as we will note later, another statute may have made the omission academic. Effective on July 1, 2001, an amendment to section 37-9-105 stated that the time limitations were inapplicable once a financial adviser was named, to "recommending the reemployment of principals, teachers, administrators or other professional educators." 2001 Miss. Laws ch. 459, § 4, codified as Miss.Code Ann. § 37-9-105 (Rev.2001). Thus, McKnight's position was covered by the 2001 amendment.
¶ 11. Several issues arise from these statutes. First, does the statutory language simply allow a school district, if a financial adviser is named prior to the usual deadlines for notifying employees about the possible renewal of their employment, to delay making the decisions? Under such a reading, the appointment of an adviser after the statutory deadline for notifying employees of contract renewal would have no effect on earlier renewals. Secondly, even if the statutes do permit the retraction of contract offers already made if a financial adviser is named after those offers, what is the effect of the deadline exemption statutory language not applying to assistant principals such as McKnight until July 1, 2001? Finally, even if these statutes authorized the district to cancel McKnight's contract for the next year, is there a constitutional problem to that cancellation?
¶ 12. We will discuss each of these issues.

1. Statutory interpretation: Post-offer withdrawal
¶ 13. School employees are provided by statute with the right to receive notice in a timely manner if they are not to be given a new contract for the subsequent school year. The purpose of the statute was to give certain employees notice and a right to be heard if renewal of their employment was not to be offered. Ford v. Holly Springs School Dist., 665 So.2d 840, 843 (Miss.1995); see generally, Holmes S. Adams, et al., School Law § 65.88, in 7 JACKSON & MILLER, ENCYCLOPEDIA OF MISSISSIPPI LAW (2001) (discusses 2001 revised Act). "[M]andatory compliance with the notice provisions" in the statute is the rule. Ford, 665 So.2d at 843. There is no "statutory or contractual authority" to permit the withdrawal of contracts already offered simply because a general "financial predicament" was discovered by the school district after offers of renewal had been made. Byrd v. Greene County School Dist., 633 So.2d 1018, 1025 (Miss.1994).
¶ 14. Unlike the situation in Byrd, applicable to the Mound Bayou action is a specific authorization for a financial adviser to consult with a school district on the need to reduce the number of personnel and to make those decisions without regard to the statutory deadlines for contract renewals. Miss.Code Ann. § 37-9-18. The more difficult issue is whether an offer of a contract, once made, can be withdrawn without penalty because of subsequent review by a financial adviser. The operative statutory language, previously quoted, is the school board may consider a reduction in personnel without compliance with the time limitations that otherwise apply to contract nonrenewal. This language should be read in light of the whole act of which it is a part.
¶ 15. In one of the earliest iterations in Mississippi of the whole act doctrine for statutory interpretation, the High Court of Errors and Appeals reasoned that a "statute must receive such construction as will, *498 if possible, make all its parts harmonize with each other, and render them consistent with its scope and object." Ellison v. Mobile & O.R. Co., 36 Miss. 572, 585 (1858) (headnote quoted; opinion has comparable language), quoted in Adams v. Yazoo & M.V.R. Co., 75 Miss. 275, 22 So. 824, 826 (1897). The entirety of the enactments on financial advisers for school districts will help us interpret the specific phrase that concerns us.
¶ 16. The statute provides for an outside audit to determine the financial health of a school district. Should significant financial dangers be found, the district is directed "to immediately cease all expenditures until a financial adviser is appointed by the state superintendent." Miss.Code Ann. § 37-9-18. The adviser is to approve or disapprove all expenditures "and financial obligations of the district"; the adviser may make recommendations on adjustments to the number of district personnel. Id. These are powers granted by the legislature and decisions reached by the appointed adviser premised on the existence of a financial crisis. If the decisions to reduce personnel can be made, but the district remains liable for the salaries of the eliminated personnel, then the statute serves no demonstrable purpose. The statute refers to the deadlines under section 37-9-105 for notifying personnel of contract renewal. By that reference, the statute is with sufficient clarity providing that financially troubled districts must be permitted to review all of their obligations for the next school year and make adjustments that actually result in saving the district money.
¶ 17. What this means is that even though a statute provides for early notice to school employees of contract renewal, that right is subordinate to a school district's need once placed under the oversight of a financial adviser to address effectively the crisis at hand.
¶ 18. Bridges argues that contracts once entered cannot be rescinded. The district counters that no physical contract was ever produced. There are precedents that once the deadline for notice of contract nonrenewal passes, there is a new contract in effect without regard to whether a formal execution occurs. Noxubee County School Bd. v. Cannon, 485 So.2d 302, 304 (Miss.1986). Regardless of that point, even assuming there was a contract, it was subject to statutes that would apply to the school district should a financial adviser be named. Anyone entering into a contract with a governmental body is chargeable with knowledge of the law governing that agreement. See Martin v. Newell, 198 Miss. 809, 815, 23 So.2d 796, 797 (1945). Consequently, terms may be implied into a school district contract consistent with the rights and responsibilities given to the district by statute if those contracts are controlled by that statute.
¶ 19. The relevant statutory rights and powers that affected school district employment contracts, with a caveat to be discussed next, existed at the time that the district in March 2001 renewed McKnight's contract. That contract was therefore subject to the right of the district, once placed under the oversight of the state superintendent through a financial adviser, to reconsider previous decisions about the renewal of employment contracts for the following school year.

2. Statutory interpretation: Applicability to assistant principals
¶ 20. Even if a school district may, once placed under the control of a state-named financial adviser, review employment decisions already effectively made for the next school year, we must assure ourselves that the authority applied to *499 McKnight's employment as an assistant principal in March 2001. On that date, the statute that established the deadlines regarding contract renewals said that once a financial adviser was named, those deadlines need not be followed for "reemployment of superintendents, assistant superintendents or principals." 1997 Miss. Laws ch. 386, § 2, codified as Miss.Code Ann. § 37-9-105. McKnight's position as assistant principal was not referenced. Only on July 1, 2001, did an amendment to this statute effectively reach all "professional educators." 2001 Miss. Laws ch. 459, § 4, codified as Miss.Code Ann. § 37-9-105.
¶ 21. There is another relevant statute, though. In the same 1997 enactment that amended section 37-9-105, was an amendment to the statute that established the procedures for appointment and powers of the financial adviser. That statute more generally stated that once a financial adviser was appointed, the "school board, in considering either a reduction in personnel or a reduction in local supplements, shall not be required to comply with the time limitations prescribed in sections 37-9-15 and 37-9-105...." 1997 Miss. Laws ch. 386, § 1, codified as Miss.Code Ann. § 37-9-18.
¶ 22. We do not find that the two references to the time deadlines, one more limited than the other, are inconsistent. It is natural in the drafting of any writing that variances arise no matter how careful the process. Section 37-9-18, as of July 1, 1997, stated that once a financial adviser was named, decisions regarding reduction in personnel could be made without regard to the time deadlines for contract renewals. Even if the time deadline statute itself, in an effort to restate that authority, did so only in a limited way, nothing in section 37-9-105 cancels the school district's earlier granted exemption from the entirety of the reach of the time deadlines. Again applying our considerations of examining the entire act, we find that the 1997 set of amendments gave to the school district all the authority it needed to reconsider any employment contract renewal.
¶ 23. We have determined that rights and powers granted to the school district by statute that affect employment contracts are implied into those contracts. When McKnight's contract was renewed, there was an implied term that renewal of his contract as an assistant principal could be reconsidered if a financial adviser was appointed.

3. Constitutional issue
¶ 24. Though we have found that the school district had the statutory right to withdraw the renewed contract, McKnight urges that such a conclusion is then overridden by his constitutional right to an unimpaired contract. Cited is a precedent in which legislation was passed after a contract was entered with a state governmental body, that altered the acceptable contract terms. Franklin v. Ellis, 130 Miss. 164, 93 So. 738 (1922). Though the statute was valid, the Supreme Court held that "the contracts between the levee board and its employees which were made and entered into before the passage of the act are not affected by the act because of the constitutional prohibition against impairment of obligation of contract." Id., 93 So. at 740.
¶ 25. Unlike Ellis, our situation involves a contract that became effective between the school district and its employee after the relevant statute had been adopted. Authority for a school district to reconsider contract renewals existed at the time that McKnight's renewal occurred. Therefore, Ellis has no weight in today's decision.
*500 ¶ 26. We start elsewhere. The state and federal constitutions both provide protections to contract rights. "No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts. . . ." U.S. Const. art. I, § 10. "Ex post facto laws, or laws impairing the obligation of contracts, shall not be passed." Miss. Const. art. 3, § 16 (1890). The Mississippi Supreme Court has found that the contract clauses of the two constitutions are substantially the same in effect. Public Employees' Retirement System v. Porter, 763 So.2d 845, 849 (Miss.2000).
¶ 27. Since the legislature is not to pass a law impairing contract rights, the perspective from which to view impairment is by standing on the law that existed when the contract was made. Tucker Printing Co. v. Board of Supervisors of Attala County, 171 Miss. 608, 616, 158 So. 336, 338 (1934). At the time McKnight's renewal became effective, a statute already existed that made that renewal subject to the right of the school district, upon the advice of a financial adviser, to reconsider renewals even after the otherwise applicable deadline. It was as if there were written into the contract a term permitting that reconsideration if those specific conditions arose. There was no impairment of vested contract rights by this pre-existing statute. See Public Employees' Retirement System v. Porter, 763 So.2d at 849 (it is the legislative elimination of contract rights after the entering of that contract that creates the constitutional infirmity).
¶ 28. The Mound Bayou Public School District had the authority to alter the offer of renewed employment that had already been made to McKnight even after the deadline that would usually apply to school employee contract renewal. There was neither constitutional nor statutory weakness in the power that the District exercised.
¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF BOLIVAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.