658 So.2d 883 (1995)
Honorable Mike MOORE, in His Official Capacity as the Attorney General of the State of Mississippi; and Honorable William R. Barnett, Honorable C.A. Henley, Jr., and Honorable Houston J. Patton, in their Official Capacities as Hinds County Youth Court Judges
v.
BOARD OF SUPERVISORS OF HINDS COUNTY, Mississippi.
No. 94-CA-00113-SCT.
Supreme Court of Mississippi.
July 20, 1995.
Michael C. Moore, Atty. Gen., Richard E. Wilbourn, III, Asst. Atty. Gen., Jackson, for appellants.
Ben J. Piazza, Jr., Watkins Ludlam & Stennis, Jackson, Ruma Haque, Henry C. Clay, III, Jackson, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:

INTRODUCTION
This case involves a dispute over the parameters of the separation of powers doctrine between the Hinds County Board of Supervisors and the Hinds County Youth Court judges as it applies to Mississippi's Youth Courts. Specifically, this dispute *884 arose concerning the ability of the Youth Court judges to perform their duties as established and codified by the legislature in Mississippi Code Annotated § 43-21-119 and § 43-21-123. Sections 43-21-119 and 43-21-123 are concerned with the development and implementation of the annual budget for a Youth Court in Mississippi.
The Hinds County Board of Supervisors take the position that the Youth Court judges' ability to participate in the development and implementation of the budget as approved by the Board constitutes a violation of the separation of powers doctrine. The lower court agreed requiring the Youth Court judges to seek appellate review with this Court. Finding that the duties of the Youth Court judges and their respective employees do not perform any core executive functions and in light of the heavy presumption of constitutionality afforded a statute passed by the legislature, we hold that the Hinds County Board of Supervisors has failed to prove the statutes in question unconstitutional beyond a reasonable doubt. Accordingly, we reverse and render the lower court's decision.

STATEMENT OF THE CASE
This case began with the filing of the Hinds County Board of Supervisors' (hereinafter "the Board") complaint in the First Judicial District of Hinds County Chancery Court on April 23, 1993, for declaratory judgment against Mike Moore and the Hinds County Youth Court judges in their respective official capacities. The Board sought a declaratory judgment pursuant to Rule 57, Mississippi Rules of Civil Procedure, to determine the constitutionality of Sections 43-21-119 and 43-21-123, Mississippi Code of 1972, as amended, under Sections 1 and 2 of the Mississippi Constitution of 1890.
The purpose of the Board's complaint was to declare that the Youth Court judges' actions under said statutes were unconstitutional violations of the separation of powers doctrine between the three governmental branches of the State of Mississippi as mandated by Sections 1 and 2 of the Mississippi Constitution of 1890. Retired Chancellor Joe G. Moss was selected by the parties as the substitute Special Chancellor to decide the case after all sitting chancellors of the Fifth Judicial District recused themselves from the matter.
The case was presented to Chancellor Moss by briefing, oral argument and written testimony in the form of an affidavit by James L. Terry, the acting Personnel Director for Hinds County, describing the positions. No oral testimony was given by agreement. Chancellor Moss issued a written Opinion on November 2, 1993. The Opinion held that:
Sections 43-21-119 and 43-21-123, Mississippi Code of 1972, as amended, are unconstitutional to the extent that the defendants have the power to (1) prepare and submit to plaintiff an annual budget identifying the number, staff position, title and amount of annual or monthly compensation of each such position, as well as other necessary expenditures and, (2) employ the persons as identified in said budget. The court finds that such matters should be placed with the plaintiff.
Chancellor Moss also held that the Board was the duly authorized and acting executive body of Hinds County responsible for funding the Youth Court pursuant to Sections 43-21-101 to 703. Additionally, Chancellor Moss held that the preparation and approval of said budget pursuant to Sections 43-21-119 and 43-21-123 was a joint executive and legislative function and that control over expenditures approved in said budget was not judicial.
A motion for reconsideration or in the alternative for clarification, was filed on December 9, 1993, which was subsequently denied on December 29, 1993. However, an Order Granting Supersedeas filed by the Attorney General to stay enforcement of the declaratory judgment was granted on March 11, 1994.
Aggrieved by the chancellor granting the Board's motion for declaratory judgment, the Youth Court judges perfected their appeal raising the following issues for review:
I. DOES THE HINDS COUNTY BOARD OF SUPERVISORS HAVE STANDING TO CHALLENGE AN ALLEGED *885 SEPARATION OF POWERS VIOLATION BY THE HINDS COUNTY YOUTH COURT JUDGES?
II(A). ARE DRAFTING PROPOSED BUDGETS AND SELECTING AND HIRING PERSONNEL BY THE YOUTH COURT EXECUTIVE AND/OR LEGISLATIVE FUNCTIONS CONTRARY TO MISSISSIPPI'S CONSTITUTIONAL SEPARATION OF POWERS DOCTRINE?
II(B). ARE DRAFTING PROPOSED BUDGETS AND SELECTING AND HIRING PERSONNEL BY THE YOUTH COURT EXECUTIVE AND/OR LEGISLATIVE FUNCTIONS THAT ARE POSSIBLY CHARACTERIZED AS BEING MINISTERIAL IN NATURE OR ARE THEY CORE ACTIVITIES OF THOSE BRANCHES?
III. EVEN IF CODE SECTIONS 43-21-119 AND XX-XX-XXX DO VIOLATE MISSISSIPPI'S CONSTITUTIONAL SEPARATION OF POWERS DOCTRINE, SHOULD NOT THE TRIAL COURT'S DECLARATORY JUDGMENT BE OVERRULED WHERE THE STATUTES FOR HIRING COURT ADMINISTRATORS INDEPENDENTLY PERMIT THE YOUTH COURT TO PREPARE BUDGETS AND HIRE PERSONNEL?

STATEMENT OF FACTS
There were no significant factual disputes to be determined by the trial court. The facts involved pertain to the manner by which a budget is developed and its contents are implemented for operation of Mississippi's Youth Courts pursuant to Miss. Code Ann. Sections 43-21-119 and 43-21-123.
The Youth Court judges are to develop and submit a budget to the Board which includes all anticipated expenditures for the ensuing fiscal year along with a list of each personnel position and the salaries for those positions. Miss. Code Ann. § 43-21-123. Under the wording of the statutes in question, the Board has the ability and authority to either accept or reject the budget of the Youth Court judges since the submitted budget is subject to approval by the Board. The statutes state that once the budget of the Youth Court is approved by the Board, a Youth Court judge or his designee shall appoint such persons from time to time as provided in the budget approved by the Board. Such employed persons who are to perform professional, clerical and other necessary work are responsible to and under the control of the Youth Court. Miss. Code Ann. § 43-21-119. The particular statutes in question are provided infra:
Miss. Code Ann. § 43-21-119. Youth Court Personnel.
The judge or his designee shall appoint as provided in section 43-21-123 sufficient personnel, responsible to and under the control of the youth court, to carry on the professional, clerical and other work of the youth court. The cost of these persons appointed by the youth court shall be paid as provided in section 43-21-123 out of any available funds budgeted for the youth court by the board of supervisors.
Miss. Code Ann. § 43-21-123. Expenditures by the youth court.
Except for expenses provided by state funds and/or other monies, the board of supervisors, or the municipal governing board where there is a municipal youth court, shall adequately provide funds for the operation of the youth court division of the chancery court in conjunction with the regular chancery court budget, or the county or family courts where said courts are constituted. In preparation for said funding, on an annual basis at the time requested, the youth court judge or administrator shall prepare and submit to the board of supervisors, or the municipal governing board of the youth court wherever the youth court is a municipal court, an annual budget which will identify the number, staff position, title, and amount of annual or monthly compensation of each position as well as provide for other expenditures necessary to the functioning and operation of the youth court. When the budget of the youth court or the youth court judge is approved by the board of supervisors of the governing authority of the municipality, then the youth court judge may employ such persons as provided *886 in the budget from time to time. The board of supervisors of any county in which there is located a youth court, and the governing authority of any municipality in which there is located a municipal youth court, are each authorized to reimburse the youth court judges and other youth court employees or personnel for reasonable travel and expenses incurred in the performance of their duties and in attending educational meetings offering professional training to such persons as budgeted.
Section 1 and 2 of Article 1 of the Mississippi Constitution of 1890 creating the separation of powers doctrine states:
ARTICLE 1
DISTRIBUTION OF POWERS
Section 1. The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.
Section 2. No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.
The Board contends that § 43-21-119 and § 43-21-123, when interpreted together and within the confines of Section 1 and 2 of Article 1 of the Mississippi Constitution of 1890, demonstrate an encroachment by the Youth Court judges into executive powers of the Board. The Youth Court judges and the Attorney General take the contrary viewpoint, naturally. Specifically, the Youth Court judges and the Attorney General take the position that the Board has the power under the statutes in question to reject the proposed budget and develop a budget of their own for the Youth Court. Therefore, the Youth Court judges and the Attorney General assert that there is no separation of powers problem because the ultimate decision of what monies and positions are needed still rests with the Board, making the mere submission of the budget and hiring of those approved by the Board ministerial in nature and not a core executive function.

DISCUSSION OF ISSUES

I. DOES THE HINDS COUNTY BOARD OF SUPERVISORS HAVE STANDING TO CHALLENGE AN ALLEGED SEPARATION OF POWERS VIOLATION BY THE HINDS COUNTY YOUTH COURT JUDGES?
The Board alleges that the Youth Court judges are precluded from raising this issue now because of a procedural bar for failure to present it to Chancellor Moss for his ruling. The Board is correct in pointing out that the issue of standing was not precisely raised by the Youth Court judges nor ruled upon by Chancellor Moss. The Youth Court judges contend in their reply brief that their answer to the complaint, wherein they responded that the Board had failed to state a ground upon which relief could be granted, encompassed their standing argument. However, we find this argument attenuated.
The Youth Court judges' trial brief does not contain any language pertaining to the defense of lack of standing. The arguments presented in the trial brief concerned the (1) nature of the Youth Court's duties, (2) that the separation of powers doctrine applies only to state government, not county government, and (3) that statutes should be found constitutional when there is a question about a statute's constitutionality which is not readily discernible beyond a reasonable doubt.
The Board points out that the Youth Court judges are procedurally barred on the standing issue. We agree and do not rule upon the standing issue as it is procedurally barred and unnecessary to the disposition of the case. See, Bender v. North Meridian Mobile Home Park, 636 So.2d 385, 389 (Miss. 1994); Parker v. Game and Fish Com'n, 555 So.2d 725, 730 (Miss. 1989) ("A trial judge will not be put in error on a matter which was not presented to him for his decision.") Accordingly, this case is decided upon the core *887 function distinction addressed under Issue II infra.

II(A). ARE DRAFTING PROPOSED BUDGETS AND SELECTING AND HIRING PERSONNEL BY THE YOUTH COURT EXECUTIVE AND/OR LEGISLATIVE FUNCTIONS CONTRARY TO MISSISSIPPI'S CONSTITUTIONAL SEPARATION OF POWERS DOCTRINE?

II(B). ARE DRAFTING PROPOSED BUDGETS AND SELECTING AND HIRING PERSONNEL BY THE YOUTH COURT EXECUTIVE AND/OR LEGISLATIVE FUNCTIONS THAT ARE POSSIBLY CHARACTERIZED AS BEING MINISTERIAL IN NATURE OR ARE THEY CORE ACTIVITIES OF THOSE BRANCHES?
This Court has charged itself with the duty to examine statutes very carefully before finding them unconstitutional. Indeed, "[s]tatutes such as the Youth Court Act come before us clothed with a heavy presumption of constitutional validity." In Interest of T.L.C., 566 So.2d 691, 696 (Miss. 1990); In Interest of R.G., 632 So.2d 953, 955 (Miss. 1994). In fact, "the party challenging the constitutionality of a statute is burdened with carrying his case beyond all reasonable doubt before this Court has authority to hold the statute, in whole or in part, of no force or effect." In Interest of T.L.C., 566 So.2d at 696 (Miss. 1990). See also In Interest of R.G., 632 So.2d 953, 955 (Miss. 1994); Hart v. State, 87 Miss. 171, 176, 39 So. 523, 524 (1905). Furthermore, to state that there is doubt regarding the constitutionality of an act is to essentially declare it constitutionally valid. Ivy v. Robertson, 220 Miss. 364, 370, 70 So.2d 862, 865 (1954). With these preliminary constitutionality hurdles in mind, the Board has a very heavy burden which was not met given the numerous possible interpretations of the statutes.
The fundamental question the Court considers when confronted with a separation of powers problem was stated in Alexander v. State By and Through Allain, 441 So.2d 1329, 1345 (Miss. 1983). Is the power being exercised by members of one branch at the core of the other's power? Id. (emphasis added). The Alexander Court began its analysis with defining the essence of each branch's power. Executive power was defined "as the power to administer and enforce the laws as enacted by the legislature and as interpreted by the courts." Alexander at 1338; Quinn v. United States, 349 U.S. 155, 161, 75 S.Ct. 668, 672, 99 L.Ed. 964, 971 (1954); Mabray v. School Board of Carroll County, 162 Miss. 632, 636, 137 So. 105, 106 (1931). "Execution is at the core of executive power." Alexander at 1338 (emphasis added). "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions." Alexander at 1338, quoting Springer v. Government of Philippine Islands, 277 U.S. 189, 202, 48 S.Ct. 480, 482, 72 L.Ed. 845, 849 (1927).
Chancellor Moss ruled that the Board was the "duly authorized and acting executive body of Hinds County... . because it is responsible for funding the Youth Court ..." Alexander v. State By and Through Allain, 441 So.2d 1329 (Miss. 1983) is the case relied upon by Chancellor Moss. However, Chancellor Moss' interpretation of Alexander is misplaced.
Alexander held that the budget-making power is a legislative duty whereby the legislature can create a committee made up of persons it may deem appropriate to help prepare the budget, but that no voting members approving the budget could be an executive officer. Id. at 1339-40. Furthermore, Alexander held that there was a "budget control process" power, which was an executive power, that is separate and distinct from the "budget-making power," which was a legislative power. Id. at 1341. Under Alexander, the "budget control process" is the executive power used to administer appropriations to accomplish the purpose for which the funds were intended from the taxes levied for the appropriations. Id. at 1341.
*888 However, the Alexander Court noted, which was subsequently reaffirmed in Dye v. State ex rel. Hale, 507 So.2d 332, 343 (Miss. 1987), that "not every act is an exercise of power" and that "not all `overlapping' is constitutionally proscribed, particularly regarding low level `administrative matters.'" See also Alexander at 1337. "But where the acts are `ongoing and are in the upper level of governmental affairs' and have a substantial policy-making character, the `trespass reaches constitutional proportions.'" Dye at 343 quoting Alexander at 1337. Also, "the essence of Alexander is that no officer of one department may perform a function `at the core' of the power properly belonging to either of the other two departments." Dye at 343 quoting Alexander at 1345-46. Therefore, the question becomes one of whether the submitting of a proposed budget and implementing it after Board approval is a `core' power. As this Court stated in Broadus v. State ex rel. Cowan, 132 Miss. 828, 96 So. 745 (1923):
The line of demarcation between offices in one department and those in another is often troublesome to determine, because in many instances the duties of offices in different departments are so linked together and dependent upon each other as not to be wholly separate, yet they are substantially so.
Broadus 96 So. at 746.
Under the Alexander precedent regarding budget-making, the legislative branch can create a committee made up of persons it deems appropriate to assist it in its budget-making responsibilities. Id. at 1340-01. However, these powers to allow others to assist in the making of the budget are limited. Id. at 1341. The limitation is that no person, a member of a department of government other than the legislature, may serve as a voting member on any such legislative budget committee. Id. at 1341.
In applying the Alexander precedent, we find that the budget for the Youth Court can be created by non-legislative members, i.e. the Youth Court judges, but still must be approved and voted upon by legislative members only, i.e. the Board. This method prevents any separation of powers problems between the Board and the Youth Court judges under § 43-21-119 and § 43-21-123 and pursuant to Alexander. In other words, pursuant to the language of the statute, the Youth Court judges, who are a non-legislative committee as allowed by Alexander, can submit the proposed budget to the Board for their approval by vote which will act in a legislative capacity. Therefore, there is no encroachment upon powers held by either branch since the judges are permitted to be a committee assisting in the development of the budget which is subject to the Board's votes and not the non-legislative committee members who helped prepare it. Accordingly, we find that the Youth Court judges' participation in the development of their budget is constitutional pursuant to § 43-21-123.
As to the subsequent implementation and control of the provisions approved in the Youth Court budget by the Board, § 43-21-119 permits the Youth Court to select, hire and control personnel as approved by the Board. At first glance, it would appear that this could be construed as a power to enforce a law as made by the legislature which would amount to a member of the judiciary exercising a core executive power. The Youth Court would be executing a law which is a core function of the executive branch, an act clearly prohibited by the United States and Mississippi Constitutions. However, we must decide if the actions of the Youth Court judges or their employees are core executive functions. This determination is pivotal.
The Board does not contest the Youth Court judges' ability to appoint and supervise non-judicial personnel necessary to the discharge of their judicial duties within the judicial branch. What is contested is the Youth Court judges' ability to appoint Youth Court personnel who are performing non-judicial functions at the core of executive power. Therefore, the real query is whether any of the personnel hired by the Youth Court perform a non-judicial function at the core of executive power; i.e. Do any of the Youth Court personnel enforce a law?
The personnel to be hired by the Youth Court include the following: (1) Director, (2) Operations Coordinator, (3) Court Clerk, (4) *889 Deputy Court Clerk, (5) Youth Counselor Trainee, (6) Youth Counselor I [Status Intake], (7) Youth Counselor I [Restitution Counselor], (8) Youth Counselor II, (9) Youth Counselor III, (10) Youth Counselor Aide I, (11) Youth Counselor Aide II, and (12) Youth Counselor Aide III. The trial court did not make any specific findings of fact regarding whether the particular personnel did or did not perform a core executive function and neither does the Board. Most of the job descriptions of the tasks to be performed by these people include counseling, interviewing, administrative matters, and clerical tasks. Accordingly, none of the personnel under the control of the Youth Court judges would be performing a core executive function, i.e. enforcing any laws. Therefore, the logical conclusion is that the actions by the Youth Court judges of hiring personnel who do not perform a core executive function is not prohibited and does not render the statutes in question unconstitutional.
Ruling in this manner may appear to some to be prohibited in light of the recent case of In Interest of R.G., 632 So.2d 953 (Miss. 1994). R.G. dealt with the constitutionality of Miss. Code Ann. § 37-13-91 which provided for the Youth Court judges to select and supervise school attendance officers. Justice McRae, writing for a unanimous Court (Justice Smith did not participate) held that § 37-13-91 violated the separation of powers doctrine under §§ 1 and 2 of the Mississippi Constitution of 1890. Id. at 958. Section 37-13-91 was held unconstitutional because
Clearly, the "core" function of the school attendance officer is to enforce the Compulsory School Attendance Law, an executive function. We find that in selecting and supervising the school attendance officers [by the Youth Court judges], the youth court judge is charged with the executive function of administering an existing law, far removed from his judiciary functions. In effect, he would become a "super" superintendent.
Id. at 957.
The Board's analogy is alleged as follows. If it is unconstitutional for a Youth Court judge to select and supervise a school attendance officer, who is charged with the duty of enforcing a law, because in doing so the Youth Court judge, who is clearly a member of the judiciary, is performing a core executive function, then why would it also not be so where a Youth Court judge selects and supervises personnel for administering Youth Court functions such as counseling, interviewing and management of those persons who find themselves within the Youth Court system? This would appear to make the actions of the Youth Court judges here unconstitutional as well. However, there is a major distinction that sets this case and R.G. apart.
The persons selected and supervised by the Youth Court judges in R.G. were also charged with an explicit enforcement of another law, making them a person performing a core executive duty and controlled by a member of the judiciary which is unconstitutional. Id. at 957. In the case sub judice, we have people who are selected and supervised by the Youth Court judges pursuant to statutory guidance, but these personnel are not additionally charged with the duty of enforcing any laws as was done in R.G. The acts to be performed by those hired in the case sub judice are non-executive judicial duties. Therefore, the statutes are constitutional and the Board can not complain since they have conceded that they have no problem with the Youth Court judges hiring and supervising personnel necessary to carrying out duties of the judiciary. Accordingly, the Youth Court judges' implementation through supervising and hiring those approved by the Board in the budget is constitutional.

III. EVEN IF CODE SECTIONS 43-21-119 AND XX-XX-XXX DO VIOLATE MISSISSIPPI'S CONSTITUTIONAL SEPARATION OF POWERS DOCTRINE, SHOULD NOT THE TRIAL COURT'S DECLARATORY JUDGMENT BE OVERRULED WHERE THE STATUTES FOR HIRING COURT ADMINISTRATORS INDEPENDENTLY PERMIT THE YOUTH COURT TO PREPARE BUDGETS AND HIRE PERSONNEL?
The constitutionality of § 9-17-1 to 5 was not tried below and is therefore not properly *890 before the Court. Therefore, we refrain from so ruling. See, Bender v. North Meridian Mobile Home Park, 636 So.2d 385, 389 (Miss. 1994); Parker v. Game and Fish Com'n, 555 So.2d 725, 730 (Miss. 1989) ("A trial judge will not be put in error on a matter which was not presented to him for his decision.")

CONCLUSION
The question of the constitutionality of the Youth Court judges' involvement in the development of the budget weighs more favorably on the constitutional side. The role of the judges, with ultimate budget authority remaining with the Board, does not create any sort of power imbalance such as to violate the separation of powers doctrine embedded within the Mississippi Constitution of 1890. Rather, it follows this Court's dictates in Alexander, as well as the mandates of the legislature.
The issue of whether the controlling of the personnel for the Youth Court creates any sort of constitutional violation of the separation of powers doctrine hinges upon the duties of the persons hired, i.e. whether they are performing a core executive function by enforcing a law which is purely an executive power. The Board offered no satisfactory explanation of what these core executive functions are that are being performed by the personnel and neither did Chancellor Moss. A review of the personnel duties reveals that all personnel are performing duties for the judiciary which are not core executive duties and; therefore, not prohibited. The Board concedes in its brief that it has no problem with the judges hiring personnel who perform non-core functions. Therefore, having been unable to find that any of these personnel are performing core executive functions, we hold that there is no constitutional violation and the statutes themselves are valid.
In summary, the Court finds the statutes in question constitutional and reverses and renders the lower court. The budget proposing by the judges under § 43-21-123 is valid under Alexander. The controlling of personnel under § 43-21-119 is also valid without any core function being performed by them. Therefore, given the presumption of constitutionality, together with the Board's inability to prove them otherwise beyond a reasonable doubt, and the aforementioned reasons, the statutes are constitutional.
REVERSED AND RENDERED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
PRATHER, P.J., and McRAE, J., not participating.