BOARD OF LEVEE COMMISSIONERS *v.* W. L. HEMINGWAY.

1. CORPORATIONS: IMPLIED POWER. *May pay debts before maturity.*

   The board of levee commissioners of the Yazoo-Mississippi Delta has the implied power as a corporation to discount and pay before maturity the interest coupons on its bonds.

2. MONEY OF LEVEE BOARD; NOT SPECIAL FUND OF STATE. *Appropriation act of* 1884.

   Under the appropriation act of 1884 the state treasurer, who is also treasurer of the levee board, was not authorized to apply money of the board to state indebtedness. It was not a "special fund," within the meaning of ? 2 of the act authorizing the use of money of the general or any special fund in the payment of state warrants.

3. PUBLIC OFFICER: LIABILITY FOR MISTAKE. *Case in judgment.*

   The board of levee commissioners made the following order in relation to the payment of coupons on its eight per cent. interest bearing bonds : " If at any time there shall be in the hands of the treasurer of the taxes of 1884, funds available for paying the coupons on the bonds issued by this board to August 1, 1885, the president may in his discretion direct the treasurer to pay off such coupons before due, in case the holders thereof will allow a discount on the same satisfactory to the president and treasurer." The president having arranged with bondholders to anticipate payment of coupons at a discount of eight per cent., notified the treasurer and directed payment of such coupons. The treasurer expressed no dissatisfaction with the rate of discount, but failed to pay the coupons, claiming the right to apply the funds of the levee board in his hands to the payment of state indebtedness. *Held,* that it was his duty to pay the coupons, and, failing to do so, he became liable to the board for the loss sustained in the failure to secure the discount.

FROM the circuit court of the first district of Hinds county.

HON. J. B. CHRISMAN, Judge.

Appellant, the board of levee commissioners for the Yazoo-Mississippi Delta, was incorporated by an act of the legislature in 1884. Appellee, defendant in the court below, was state treasurer, and was *ex-officio* treasurer of said levee board. The board, in accordance with law, had issued and negotiated its bonds for five hundred thousand dollars, bearing interest at the rate of eight per cent. per annum, and these were in the hands of the Northwest-

ern Improvement Company, of New York, where the bonds and interest coupons were payable; forty thousand dollars of the coupons being due August 1, 1885.

At a meeting of the board in January, 1885, an order was entered in the following words : "Ordered that if at any time there shall be in the hands of the treasurer of the taxes of 1884, funds available for paying the coupons on the bonds issued by this board to August 1, 1885, the president may, in his discretion, direct the treasurer to pay off such coupons before due, in case the holders thereof will allow a discount on the same satisfactory to the president and treasurer."

On February 10, 1885, the president, T. W. White, of Hernando, Miss., without consultation with the treasurer, wrote the holders of the bonds to ascertain if they would accept payment in advance of the August coupons, and allow a discount at the rate of eight per cent. per annum, being the rate of interest the bonds bore. On February 14, the holders of the bonds replied that they would accept the payment in advance and allow this discount. On February 23, the president wrote the appellee, Hemingway, who lived at Jackson, Miss., informing him of the arrangement for paying the coupons and requested that it be consummated by March 1. An immediate reply to this letter was asked. The treasurer was also furnished with a copy of the order of the board authorizing the transaction. He made no reply to the letter.

On March 6, the president again wrote the treasurer, requesting him to take up the coupons, stating that the holders had been informed that it would be done at once. To this no answer was received. On March 16, the president wrote another letter to the treasurer asking if he had arranged the coupon matter.

And on May 25, he again wrote as follows : "I desire to have the arrangement for taking up the coupons on our bonds made with Northwestern Improvement Co. consummated, as it will much benefit our credit in case we should need to use it for other negotiations. Please send on funds and have the matter closed by 1st of June, if possible, or as early thereafter as can be." To neither of these letters was any response given. But, on the 28th

of May, defendant wrote the president of the board a letter in relation to another subject.   On the 29th the latter replied to this, and added : " I suppose you have mine of the 25th on the subject of the advance payment of our August coupons."

Receiving no answer, on the 5th of June, 1885, Mr. White, as president, again wrote the defendant, referring to a telegram he (White) had sent from Oxford on the 3d about this matter.   In this letter he asked what position the treasurer held, and what his objection was, if any, to the payment.   This letter was not answered, but some time early in June the defendant visited the president at his home in Hernando, and informed him for the first time that he had paid out the funds which he had received for the levee board, for state purposes under a provision in the appropriation act for 1884, which he construed to be his duty, and that he could not replace the funds then, but would pay the coupons when due.   The board, failing to save the discount on the coupons, brought this suit against the treasurer for twelve hundred dollars, the sum it is alleged would have been saved to it by the advance payment.

The case was, by consent, tried by the court without a jury.   The facts above stated were shown in evidence, and the correspondence was read.   The order of the board was also read, the defendant objecting that it was without authority.   T. W. White, president of the board, testified that the defendant at the interview in June, stated that the amount lost to the board would be paid either by the state or himself.   But the defendant denied this, and testified that he felt that he was acting within the law in using the funds for state purposes as he had done, and that he never recognized his liability to the board for the amount.   Being asked, on cross-examination, if he objected to making the advance payment by reason of the form of the order, or the want of a proper voucher, the defendant answered that he never got to the consideration of that, as he felt that he had the right to apply the money to state purposes under the appropriation act of 1884, and that this was a higher duty than to save interest for the levee board.   He stated that he would pay coupons after maturity without any order, but

that in paying them before due he would want a proper order and a receipt. The defendant further testified that the bulk of the money, he thought, had been paid out for state purposes when he received notice of the arrangement made by the president for paying the interest ; that he did not answer the letters because he was not sure what the demands of the state would be, and, as he could not tell, the matter was just postponed from day to day in order to ascertain ; that the coupons were paid at maturity.

Judgment was entered for defendant and plaintiff appealed.

*W. P. & J. B. Harris,* for appellant.

1. The bondholders consenting, the board had the power to pay its coupons before maturity in consideration of an abatement of interest. There was no other use to which the money could be applied, and the advance payment was not only politic but in the interest of the taxpayer, and was dictated by the clearest financial policy. It was not prohibited by any law. The precedent was not dangerous. No warrant for discriminating and no unjust constraint on bondholders is to be inferred. Its admissibility as a judicious step, not in conflict with the financial scheme, is sufficient without imparting to it the higher constraint of legal duty. So cogent were the reasons moving the commissioners, that to act upon them was a duty devolving on prudent trustees. The creditor and debtor both being willing, there is an inherent capacity to put an end to the relation by satisfying the obligation in advance.

2. The treasurer is required to give bond and to safely keep and pay out money on the order of the board. But no order is required for paying coupons. In this case taking up the coupons on the order of the board under the direction of the president was sufficient. There was nothing wanting in the way of authority or voucher. If that or any other difficulty as to details hindered the treasurer, he should have made it known, and it would have been easily remedied.

3. There was no power to apply the tax levied on the property in the levee district under the act creating the levee board to any other purposes than the payment of the debts of the board. *Gibbs* v. *Green,* 54 Miss. 592. The levee tax was a scheme independent

of the financial arrangements of the state.  The policy as regards the onerous levee systems of the Mississippi river front is one for which the state at large has uniformly declined to bind itself.

The bonds of the levee board could not have been negotiated if there had been a proviso in the act that the tax should be subject to appropriation for state purposes.  There is a difference between the security of a fixed and irrepealable tax, and a mere promise by the state which cannot be enforced in the courts.

The appropriation act of 1884 and the levee law under which these bonds were issued, though enacted at the same session, were unrelated and distinct.  The treasurer gives bond to the levee board, and he is an officer of the board, and the tax collectors give bond to the levee board for the due collection of the levee tax, thus distinguishing it from state revenues.  Acts 1884, p. 155, § 16.

The terms " general fund " and " special funds " as used in the appropriation act apply to money owned by the state.  But the levee fund is not included in these, and is subject to appropriation only by the levee board.  In the appropriation act the legislature clearly meant to deal only with the general fund and the known special funds of the state under its control.

4. The treasurer did not object to the form of the order or the rate of discount.  His own explanation is that he was looking out for the interests of the state, and used the funds of the levee board for state purposes, claiming that he had the right to do so.  If he did not use the funds lawfully, he cannot escape liability.  He never did intend to shelter himself under any defect in the order or because of objection to the rate of discount.  Every step of the board was laid before the treasurer, and he was called upon to speak his mind.  It was his plain duty to give the true reason for refusing to act as directed.  The only reason he gave was that he had disbursed the money in paying general state warrants, and this was no excuse.  If he objected to the rate of discount or the form of the order, he should have spoken out.  Will the court adopt for him as an excuse what he would be quick to disavow, and which he never offered ?

The abatement was reasonable and fair and highly advantageous, and the defendant, acting as an agent, was bound to use diligence in protecting the interests of the board.  Story on Ag., §§ 96, 185, 186 ; Wharton on Ag. 780 ; *Bigelow* v. *Walker*, 24 Vt. 149.

' If he acted according to law, the controversy is ended ; if he violated it, he is responsible.  Story on Ag., § 320.

· Public agents are personally liable for misfeasance or malfeasance.  If they go outside of the law, they are no better off than other wrong-doers.  The defendant having acted upon the idea that he could disregard the order entirely, cannot now be heard to say that he did not expressly by letter or otherwise agree to the rate of discount.

*W. P. Harris,* as counsel for appellant, argued the case orally.

*T. M. Miller,* attorney-general, for appellee.

1. There is nothing in the act creating the board of levee commissioners, nor in the general law authorizing the president of the board to make this financial stroke.  It is not claimed that he had any authority other than that derived from the order read in evidence.  Hence it must follow that unless this order empowered the president to make the agreement with the bondholders, the first essential averment in the complaint has failed.  According to the allegations in the declaration, the president's authority was complete and he needed to consult no one.  But, under the order, such authority was not conferred upon the president alone.  The discount was to be " satisfactory to the president and treasurer."  Now, the president assumed that the treasurer ought to be satisfied, and gave orders as if his humble and superfluous assent *had been obtained.*  But the defendant never expressed his satisfaction with the alleged terms.  He was never asked to do so.

As the treasurer, long after the time when the president's request was made, informed the latter officer that he had paid the money out for the state, counsel claim that the defendant is estopped to set up his non-concurrence in the plan to discount the coupons.  The lower court wisely repudiated this idea.  It could have no application to a public officer.

The president never did *conclude* such an arrangement with the

bondholders as the order authorized, and for this reason there was never any duty or obligation on the part of the treasurer to act as requested.   This is a sufficient answer.   Suppose, for argument's sake, that we concede that this defense is an after-thought, as is charged by opposite counsel, and that the only reason given for not paying the interest was that the money had been disbursed, how does that help the plaintiff's case?   Does the statement of one ground of defense, *after the fact,* preclude the defendant from relying upon another?   Will the assertion of even an untenable defense, *create* a right of action if it never existed?   As the treasurer supposed he had the right to use the money for state purposes, he never considered the form of the order, the advisability of the discount, and the like.

2. The defendant is sued for failing to execute an agreement finally made and concluded between the board and the bondholders. But there was never any such agreement.   The president merely wrote a letter of inquiry to ascertain if the bondholders would consent to a discount, to which an affirmative reply was given. The president made no offer, and there was no acceptance.   The inquiry and answer did not conclude a *contract.*   It is no answer to say that this is technical.   A public officer, who has acted in good faith, but who may have made a mistake, is entitled to avail of all defenses.

3. But, if by any possibility I am mistaken in the positions before taken, I submit that the commissioners had no power to authorize their president to draw on the treasurer, even with the latter's consent, for a sum of money not previously fixed and allowed by the board.   Under § 6 of the Act of 1884 creating the levee board, no money was to be paid except upon an allowance made by the *board,* and this was to be evidenced by a voucher or warrant, signed by the president and countersigned by the secretary.   The order introduced in evidence did not comply with this section of the act, and would not have authorized the treasurer in paying out money of the board.

4. Lastly, it is submitted, not without diffidence, however, that the treasurer did not err in his construction of the act of

1884, and in treating the money of the levee board as a special fund in the treasury. It cannot be argued that the appropriation act of 1884 authorizing this was unconstitutional, for the bond-holders are not complaining; and, besides, when the bonds were issued the state had reserved the right to use the money until actually needed for the purposes for which it was raised, and the bond-holders could not complain of such use. This was a special fund, and how did it differ from any other special fund in the treasury? The treasurer used it because under the law it was not required until August 1, when it was certain the money would be replaced under existing laws. But if the treasurer's view was incorrect, his action in disbursing the money for general state purposes presents a case of *damnum absque injuria.*

Another proposition is submitted without argument, and that is that the board of levee commissioners were not empowered to anticipate their bonds or coupons. If such power existed, it was derived from some source other than the act of incorporation.

I submit that the judgment should be affirmed.

The attorney-general also argued the case orally.


CAMPBELL, J., delivered the opinion of the court.

The board of levee commissioners possessed the power to anticipate the maturity of the coupons for interest on its bonds, and pay them with money on hand for their payment. Such power may be said to have been an attribute of its being, and implied from its authority to contract and be contracted with, conferred by the act creating it.

The resolution or order of the board was a sufficient authorization for the payment of the money in discharge of the coupons, on their presentation in pursuance of the resolution.

By its terms the money was to be applied to the payment of the coupons, upon the direction of the president, if the rebate was satisfactory to him and the treasurer. Nothing formal or express to show satisfaction or contentment with the rate on the part of the officers named was required. It was only necessary for the fact to exist, and nothing was said as to its manifestation in any

particular manner. Only a state of mind was involved, which would be manifested by the direction of the president and payment of the money by the treasurer in pursuance of it. Acting on the resolution, the president proposed to the holder of the bonds to prepay interest for a rebate of eight per cent., which was the rate of interest on the bonds, and this was agreed to by the holder, of which the treasurer was informed. He made no objection to the rate, and did not evince dissatisfaction with it, in any manner. It must be conclusively presumed, as against him, that he was content with the rate, as he did not object to it, and was silent under circumstances which required him to speak, if he had objection on this point, which was the only one he had any discretion about, or as to which he was entitled to a voice. Besides, the resolution of the board did not commit to the treasurer, its officer and servant, a capricious discretion, even as to the rate of discount. He must be presumed to have been satisfied with the rate, because he should have been in legal contemplation. The rate was the same that the bonds bore. It exceeded the prescribed legal rate of interest, which is six per cent. Also, when he did speak, so as to show his state of mind about the business, the treasurer did not express dissatisfaction with the rate, but excused his non-compliance with the direction of the president on other and distinct grounds, entirely harmonious with the assumption that the rebate offered was satisfactory to him.

The money of the levee board was not a " *special fund,*" within the meaning of § 2, of the appropriation act of 1884. That has reference only to state funds for special purposes, as to which the inter-changeability contemplated would do no harm. It embraced only funds in the hands of the state treasurer *as such*, and did not include a fund, not disbursable in pursuance of acts of the legislature, which furnished *data* for calculation as to the use of money, but subject to the orders of the levee board.

The state treasurer was made *ex-officio* treasurer of the levee board, but this seems rather a *discriptio personæ* than anything else, for he was required to give bond as treasurer of said board, and mention is made of his salary as such, and his accountability

for its funds is to it, and not to the state, as in case of all money received by him for the state.

While it is clear that the treasurer erred in concluding that he had the right to use the money of the levee board as a "*special fund*" under the act of 1884, we think his mistake a very natural one, under the circumstances, arising from a failure to note the distinction between his official relations as treasurer of distinct corporations with correspondingly different responsibilities and duties, and between the funds in his hands in the two distinct capacities—a duplex relation from which it is not surprising that some confusion arose, amid which it was quite natural that the treasurer should prefer the supposed interests of the state.

*It follows that the judgment must be reversed and the cause remanded for a new trial.*