# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-SA-00104-SCT

*STATE OF MISSISSIPPI AND J. K. STRINGER, JR., IN HIS OFFICIAL CAPACITY AS STATE FISCAL OFFICER, AND JIM HOOD, ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI, EX REL. THE STATE OF MISSISSIPPI*

*v.*

*THE BOARD OF LEVEE COMMISSIONERS FOR THE YAZOO-MISSISSIPPI DELTA*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/20/2004 |
| TRIAL JUDGE: | HON. WILLIAM G. WILLARD, JR. |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | MEREDITH McCOLLUM ALDRIDGE |
| | HAROLD EDWARD PIZZETTA, III |
| ATTORNEYS FOR APPELLEE: | WILLIAM F. GOODMAN, JR. |
| | JOHN G. CORLEW |
| | GEORGE R. FAIR |
| | JOHN P. HENSON |
| | RICHARD G. NOBLE |
| | FRANK OWEN CROSTHWAIT, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 06/15/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DICKINSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. Section 7(4) of House Bill 1279 (2004) reads:

During the period beginning upon July 1, 2004, and through June 30, 2005, the Board of Levee Commissioners of the Yazoo-Mississippi Delta Levee District, upon demand of the State Fiscal Officer, shall transfer to the State Treasurer a sum or sums not exceeding a total of Five Million Dollars ($5,000,000), which shall be deposited into the Budget Contingency Fund.

On July 1, 2004, J.K. Stringer, Jr., the State Fiscal Officer, made demand upon the Board of Levee Commissioners of the Yazoo-Mississippi Delta Levee District ("Board") for $5,000,000.00 pursuant to Section 7(4). Thereafter, the Board filed suit in the Coahoma County Chancery Court. In seeking a declaration that the legislation was unconstitutional and an injunction preventing its enforcement, the Board averred that: (1) Section 7(4) was unconstitutional because it had not been properly publicized or referred to committee as required by Article 11, Section 234 of the Mississippi Constitution; (2) the Legislature did not have the authority to require the transfer of Board funds and, therefore, Section 7(4) violated Article 11, Section 227 et seq. of the Mississippi Constitution; (3) the legislation violated the separation of powers doctrine in Article 1, Sections 1 and 2 of the Mississippi Constitution by "infring[ing] and encroach[ing] upon the constitutionally invested powers of the Levee Board"; and (4) the legislation violated Article 3, Section 17 of the Mississippi Constitution and the 14th Amendment of the United States Constitution by directing the taking of Board property without due compensation or due process.

¶2.     The learned chancellor agreed with the Board and granted summary judgment in their favor, declaring Section 7(4) of House Bill 1279 unconstitutional and enjoined the State from enforcing the legislation. From that final judgment, the State appeals.

**FACTS**

¶3.     Under Article 11 of the Mississippi Constitution of 1890, "maintenance of a levee system in the State was made mandatory." *Yazoo & M.V.R. Co. v. Board of Mississippi Levee Com'rs*, 188 Miss. 889, 195 So. 704, 705 (1940). Therefrom, two levee districts were

2

created by the state legislature: the Mississippi Levee District and the Yazoo-Mississippi Delta Levee District. *See id*. "The Yazoo-Mississippi Delta levee district comprises all of the northern counties of the state which are subject to overflow from the Mississippi river." ***Ham v. Board of Levee Com'rs for Yazoo-Mississippi Delta***, 83 Miss. 534, 35 So. 943 (1904). The Levee Board of the Yazoo-Mississippi Delta Levee District itself "was originally created by chapter 168, Laws of 1884, and was recognized and continued by section 227 et seq. of the state Constitution." ***Clark v. Miller***, 142 Miss. 123, 105 So. 502, 505 (1925). Article 11, Section 232 of the Constitution of 1890 specifically provides that, "[t]he commissioners of said levee district shall have *supervision* of the *erection*, *repair*, *and maintenance* of the levees in their respective districts ... ." Miss. Const. art. 11, Section 232 (emphasis added). Article 11, Section 237 states, "[t]he legislature shall have full power to provide such *system of taxation* for said levee districts as it shall, from time to time, deem wise and proper." Miss. Const. art. 11, Section 237 (emphasis added). Article 11, Section 234 mandates that:

> *[n]o bill* changing the boundaries of the district, or *affecting the taxation or revenue of the Yazoo-Mississippi Delta Levee District ... shall be considered by the legislature unless* said bill shall have been published in some newspaper in the county in which is situated the domicile of the board of levee commissioners of the levee district to be affected thereby, for four weeks prior to the introduction thereof into the legislature; *and no such bill shall be considered for final passage* by either the senate or house of representatives, *unless* the same shall have been referred to, and reported on, by an appropriate committee of each house in which the same may be pending; and no such committee shall consider or report on any such bill unless publication thereof shall have been made as aforesaid.

Miss. Const. art. 11, Section 234 (emphasis added).

3

¶4. House Bill 1279 was initially introduced on February 23, 2004 and thereafter referred to the Select Committee on Fiscal Stability of the House of Representatives ("Select Committee"). On February 27, 2004, it was transmitted to the Senate where it was referred to the Appropriations Committee. Section 7(4) did not appear in the bill initially referred to either the Select Committee of the House of Representatives or the Appropriations Committee of the Senate. Instead, Section 7(4) first appeared in the Conference Report negotiated by a six (6) member Conference Committee of the House of Representatives and Senate which was filed and adopted on May 9, 2004. On May 14, 2004, the state legislature signed and enrolled House Bill 1279, which was thereafter signed by the Governor, to become effective on July 1, 2004.[1]

¶5. On June 24, 2004, the Board ("Appellees") filed a Complaint in chancery court against the State of Mississippi and J.K. Stringer, Jr. as the State Fiscal Officer, ("Appellants") seeking a judgment declaring Section 7(4) unconstitutional and enjoining the State from confiscating any revenue from the Yazoo-Mississippi Delta Levee District. Substantively, the Board alleged that Section 7(4) violated: (a) Article 11, Section 234 of the Mississippi Constitution (failure to publish Section 7(4) in some newspaper in the county in which is situated the domicile of the Board, i.e. Coahoma County, for four (4) weeks prior to its introduction in the Legislature; failure, upon information and belief, to have Section 7(4) referred to, or reported on by, an appropriate committee of either the House of Representatives or the Senate); (b) Article 11, Section 227, et. seq. and Article 1, Section 2

---

[1]See paragraph 1 for the text of Section 7(4) of House Bill 1279 (2004).

of the Mississippi Constitution (Section 7(4) infringes and encroaches upon the constitutionally invested powers of the Board by delegating to the State Fiscal Officer the power to confiscate funds under the Board's exclusive control; also, Section 7(4) improperly authorizes the use of Board funds for non-levee purposes); and (c) Article 3, Section 17 of the Mississippi Constitution and the Fourteenth Amendment of the United States Constitution (Section 7(4) directs the taking of Board property without due compensation or due process).

¶6.    On July 1, 2004, pursuant to Section 7(4), the State Fiscal Officer made demand upon the Board for $5,000,000.00. On July 30, 2004, the State answered the Complaint, denying the Board's allegations and affirmatively asserting that, "[the Board] cannot overcome the strong presumption of validity of Section 7(4) of House Bill 1279. *See*, *e.g.*, ***Edwards v. State***, 800 So. 2d 454, 460-61 (Miss. 2001)." The Attorney General filed a Motion to Intervene,[2] which was granted on August 9, 2004.

¶7.    On September 9, 2004, the Board filed a Motion for Summary Judgment. The motion repeated the substantive allegations of the Complaint and was based in part upon affidavits of Sykes Sturdivant and Steve Stewart. Sturdivant, the President of the Levee Board for the Yazoo-Mississippi Delta Levee District since January 1997, stated that the Board was funded

[2]Specifically, the Attorney General stated:

Plaintiff's challenge to Section 7(4) ... is such a constitutional challenge described in Rule 24(d) [of the Mississippi Rules of Civil Procedure]. Because Miss. Code Ann. Section 7-5-1 provides that the Mississippi Attorney General is the chief legal officer and advisor for the State of Mississippi, the Attorney General respectfully seeks permission to intervene in this action for the limited purpose of arguing the constitutionality of the challenged legislation and to rebut Plaintiff's constitutional challenge.

by revenues generated from properties within the Levee District and had never, to his knowledge, received funds from the State. He further submitted that the funds available to satisfy Section 7(4) were revenues generated from properties within the Levee District and were held as reserves for levee emergencies pursuant to the long-range plans adopted by the Board. As such, he opined that if required to comply with Section 7(4), the Board might be forced to tax lands within the Levee District which were not being taxed at the time. Steve Stewart was the editor and publisher of the Clarksdale Press Register, the only newspaper published or located in Coahoma County. He stated that, "[n]either Section 7(4), nor House Bill 1279, in its entirety, has ever been published in the Clarksdale Press Register."

¶8. On October 29, 2004, the State filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. Regarding Article 11, Section 234, the State asserted:

> to the extent it is relevant, Section 234 contains an explicit recognition of the Legislature's authority to enact bills affecting and controlling the revenue of levee boards. Furthermore, the Levee Board's contention that Section 7(4) should be struck down because of the Legislature's alleged noncompliance with Section 234's procedural requirements presents a non-justiciable question.

As to Article 11, Section 227, et seq., the State contended:

> [t]he Legislature has inherent authority over public funding matters, limited only by express prohibition. The Legislature is endowed with and [has] previously utilized its express authority and control over the Levee Board by virtue of constitutional and statutory provisions. Because there is no prohibition on the Legislature's inherent authority to enact Section 7(4), and because the Legislature has express control over the public funds of the Levee Board, Section 7(4) in no way violates Article 11, Section 227 et seq.

6

The State further provided that Section 7(4) did not violate Article 1, Section 2 because, "[t]he Levee Board's status as part of the executive branch makes its funds, which are raised pursuant to State law, subject to the control of the Legislature." Finally, the State averred that Section 7(4) did not violate either Article 3, Section 17 of the Mississippi Constitution or the Fourteenth Amendment of the United States Constitution because "the Legislature's proper control of public funds is not a 'taking' within the meaning of these constitutional provisions."

¶9.    On December 20, 2004, the chancery court granted summary judgment for the Board, declaring Section 7(4) "unconstitutional and unenforceable at law" and "enjoin[ing] [the State] from taking any further steps to enforce that purported statutory enactment." The chancellor determined that historically, "[e]xcept for perhaps an appropriation for use in guarding the levees (see Chapter 61 of the Laws of 1918), the Levee Board has not received any funding from the State of Mississippi either for the erection, repair, maintenance, and management of the levees within the Levee District or for any other purpose."[3] Moreover, the chancellor found existing case law to establish "that the Levee Board is vested 'with the plenary authority' to deal with the erection, maintenance and repair of the levee system in

_____

[3]Section 2 of Chapter 61, Laws of 1918 - House Bill No. 33 provided:

That from the amount appropriated, for the year 1918, the sum of ... $30,000 ... may be used, if demand is made therefor, by the levee commissioners for the Yazoo-Mississippi delta levee district, and for the Mississippi levee district for the purpose of guarding the levees of said district, in case of high water. The sums so expended to be divided between the two districts. The Mississippi levee district to receive two thirds and the Yazoo-Mississippi delta levee district, one third.

7

[its] discretion for purposes of protecting the property of its district from loss and destruction.

*Ham*, 35 So. at 946." As such, the chancellor concluded that the Board "necessarily" has

"authority over and control of, Levee District revenues, including the use of such revenues.

*See Bobo* [*v. Board of Levee Com'rs for Yazoo-Mississippi Delta*], [92 Miss. 792, 46 So.

819,] 823 [(1908)] ... *see also National Surety Co. v. Miller*, [155 Miss. 115,] 124 So. 251,

256 (1929) ... ." Because the Legislature may only address aspects of the levee system to the

extent that "'it does not infringe upon the proper exercise of powers granted the Levee

Commissioners by the Constitution' ... *Franklin v. Ellis*, [130 Miss. 164,] 93 So. 738, 740

(1922)" the chancellor found that Section 7(4)'s mandated transfer of Board funds to the

State Treasurer for general use constituted a "flagrant violation of Article 11."[4] Furthermore,

the chancellor determined that directing Board funds for non-levee purposes violated "the

_____

[4]The chancellor specifically found:

> First, any arguable power of the Legislature over the financial affairs of state
> agencies or political subdivisions, such as counties and municipal corporations
> has no application to the Levee Board. The Levee Board is in effect a
> *constitutionally created body*. It is *not a creature of the Legislature* like state
> agencies or its political subdivisions. ... Second, the Supreme Court has held
> on numerous occasions that the Legislature may only legislate with respect to
> the levee system to the extent not 'otherwise provided by the Constitution' and
> only 'so long as it does not infringe upon the proper exercise of powers
> granted the Levee Commissioners by the Constitution' or 'trench upon any
> constitutional rights.' *E.g.*, *Clark*, 105 So. at 505; *Franklin*, 93 So. at 740;
> *Bobo*, 46 So. at 824. ... Article 11 does not, as the State argues, provide for
> legislative control over the revenues of the Levee Board. Section 237 merely
> gives the Legislature the power to provide a system of taxation. ... The Levee
> Board has its own constitutionally granted power to levy taxes. *See Yazoo &
> M.V.R. Co.*, 195 So. at 706.

(Emphasis added).

8

prohibition of Article 1, Section 2 of the Constitution, prohibiting one department from exercising powers properly belonging to another."[5] Finally, the chancellor held that Section 7(4) was also unconstitutional as it violated Article 11, Section 234.[6] From that ruling comes this appeal.

## STANDARD OF REVIEW

¶10. Summary judgment is required under Miss. R. Civ. P. 56 if the evidence in the record shows that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Miss. R. Civ. P. 56(c); **Brown v. Credit Center, Inc.**, 444 So. 2d 358, 362 (Miss. 1983). In analyzing such a determination, this Court "review[s] de novo the granting or denying of summary judgment and examine[s] all the evidentiary matters before us - admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." **Coleman Powermate, Inc. v. Rheem Mfg. Co.**, 880 So. 2d 329, 332 (Miss. 2004). After viewing all the evidence "in the light most favorable to the party against whom the motion has been made," summary judgment will be upheld only when "the moving party is entitled to judgment as a matter of law." **Pitts v. Watkins**, 905 So. 2d 553, 555 (Miss.

---

[5]The chancellor stated, "[t]he Legislature is the legislative branch. *See* Article 4, Section 33. The Levee Board belongs to the executive branch. *See* **Haley v. State**, 108 Miss. 899, 67 So. 498 (1915)."

[6]Specifically, the chancellor determined:

Section 7(4) clearly 'affects' the revenue of the Levee District; i.e. funds generated from Levee District property. It may also affect the taxation of the Levee District. If required to comply with Section 7(4), the Levee Board may again be required to tax the property located in the Levee District to maintain its current level of operations and reserves. It is thus precisely the type of law that Section 234 'had in mind.' *See* **Bobo**, 46 So. at 823.

2005) (quoting *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 70 (Miss. 1996)). Both

parties in this case agree there is no genuine issue of material fact. Because "[s]tatutory

interpretation is a matter of law which this court reviews de novo," *Wallace v. Town of

Raleigh*, 815 So. 2d 1203, 1206 (Miss. 2002), the issue under de novo review is whether

Section 7(4) was unconstitutional, such that the Board was entitled to judgment as a matter

of law.

**ISSUES**

¶11.    The State raised three issues in its initial brief:

> 1.  Did the chancery court err in holding that Section 7(4) of House Bill 1279
> (2004) violates Article 11 and Article 1, Section 2 of the Mississippi
> Constitution of 1890 when the Legislature has both inherent and specific
> authority to enact Section 7(4)?
> 2.  Did the chancery court err in considering whether the Legislature complied
> with the procedures of Article 11, Section 234 of the Mississippi Constitution
> of 1890 when the question of compliance is beyond judicial review?
> 3.  Did the chancery court err in holding that Section 7(4) of House Bill 1279
> violates Article 3, Section 17 of the Mississippi Constitution of 1890 and the
> 14[th] Amendment to the United States Constitution when the Levee Board has
> no property rights in the funds at issue?

The Board posits in its brief that the issues are more accurately stated as follows:

> 1.  Whether Section 7(4) of House Bill 1279 (2004), purporting to confiscate
> Five Million Dollars of Levee Board funds for non-levee purposes, violates
> Article 11 of the Mississippi Constitution of 1890 by impermissibly infringing
> upon the Levee Board's constitutionally vested plenary authority over the
> levee system and the revenues thereof?
> AND/OR
> 2.  Whether Section 7(4) of House Bill 1279 (2004) violates Article 3, Section
> 17 of the Mississippi Constitution of 1890, and/or denies the due process of
> law guaranteed by the 14[th] Amendment to the Constitution of the United
> States, by purporting to take the Levee Board's constitutionally protected
> property without compensation?
> ALTERNATIVELY

10

3. Whether, in any event, Section 7(4) of House Bill 1279 (2004) is unconstitutional because the Legislature did not honor the legislative due process prerequisites (newspaper publication and committee referrals and reports) mandated by Article 11, Section 234 of the Mississippi Constitution of 1890?

¶12. In its reply brief the State restated the issues as follows:

1. Has the Levee Board demonstrated - after resolving all doubts in favor of constitutionality - that Section 7(4) violates the clear language of the Mississippi Constitution?
2. Has the Levee Board demonstrated that this Court ... may review the Legislature's compliance with procedural provisions (i.e. Article 11, Section 234 of the Mississippi Constitution)?

## ANALYSIS

¶13. A "very heavy burden" rests upon this Court before it may find a statute unconstitutional. *Moore v. Board of Sup'rs of Hinds County*, 658 So. 2d 883, 887 (Miss. 1995) ("This Court has charged itself with the duty to examine statutes very carefully before finding them unconstitutional."). As this Court stated in *Pathfinder Coach Division of Superior Coach Corp. v. Cottrell*, 216 Miss. 358, 62 So. 2d 383, 385 (1953):

> [i]n the case of *Miss. State Tax Commission v. Flora Drug Co.*, 167 Miss. 1, 148 So. 373, 376, the court quoted with approval from *Sutherland on Statutory Construction*, Vol. I, Sec. 65, 2d ed., as follows: 'Statutes cannot be declared invalid on the ground that they are unwise, unjust, unreasonable, immoral, or because opposed to public policy, or the spirit of the Constitution.' And in *Albritton v. City of Winona*, 181 Miss. 75, 178 So. 799, 803, 115 A.L.R. 1436, the Court said: 'In determining whether an act of the Legislature violates the Constitution, the courts are without the right to substitute their judgment for that of the Legislature as to the wisdom and policy of the act and must enforce it, unless it appears beyond all reasonable doubt to violate the Constitution.'

The underlying consideration behind this position is that, "[w]hen a party invokes our power of judicial review, it behooves us to recall that the challenged act has been passed by

11

legislators and approved by a governor sworn to uphold the selfsame constitution as are we." ***State v. Roderick***, 704 So. 2d 49, 52 (Miss. 1997). Therefore, "under Mississippi law a party challenging the constitutionality of a statute must prove unconstitutionality beyond a reasonable doubt." ***Cities of Oxford, Carthage, Starkville and Tupelo v. Northeast Elec. Power Ass'n***, 704 So. 2d 59, 65 (Miss. 1997) (citing ***Secretary of State v. Wiesenberg***, 633 So. 2d 983, 989 (Miss. 1994); ***Miss. Power Co. v. Goudy***, 459 So. 2d 257, 263 (Miss. 1984)). In other words:

> one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusions affirmatively, and clearly establish it beyond a reasonable doubt. All doubts must be resolved in favor of validity of a statute. If possible, a court should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity.

***Id***. (citing ***Loden v. Miss. Public Service Comm'n***, 279 So. 2d 636, 640 (Miss. 1973) (citations omitted)). Moreover, "to state that there is doubt regarding the constitutionality of an act is to essentially declare it constitutionally valid." ***Moore***, 658 So. 2d at 887 (citing ***Ivy v. Robertson***, 220 Miss. 364, 370, 70 So. 2d 862, 865 (1954)). Therefore, Section 7(4) was properly adjudged unconstitutional only if it directly conflicted with "the clear language of the constitution." ***PHE, Inc. v. State***, 877 So. 2d 1244, 1247 (Miss. 2004).

**I. Whether the Levee Board demonstrated - after resolving all doubts in favor of constitutionality - that Section 7(4) violates the clear language of the Mississippi Constitution.**

¶14. "Under Section 227 et seq. of the Constitution, this levee district is in the same situation as if it had been originally created by the Constitution ... ." ***Yazoo & M.V.R.***, 195

12

So. at 706. Given the "broadness of the terms employed in granting powers to the [Levee Board]" under Article 11, this Court has determined that:

> it is plain that it was the intention to vest the boards of levee commissioners with *plenary authority to deal with the* '*erection*, *maintenance*, *and repair*' *of the levee system at their discretion*, for the purpose of protecting the property of their respective districts from loss and destruction. The act incorporating the board of levee commissioners of the Yazoo-Mississippi Delta expressly directs that it shall be construed as 'an exercise by the Legislature of all the powers appertaining to it necessary to carry into effect the intent of said act,' and, as stated, this legislative enactment is practically embodied in our organic law. *The terms employed in the Constitution, by any reasonable interpretation, convey the evident design of clothing levee boards with the power to* '*erect*,' '*construct*,' *and* '*locate*' *levees ... .*

*Ham*, 35 So. at 946 (emphasis added).[7] These "necessarily large powers of discretion" are aimed toward enabling the Board to "successfully carry into effect the objects of its creation ... ." *Id*. at 948. Outside of the constitutional powers bestowed upon the Board, however, it "is subject to the supervision and control of the Legislature and can exercise, unless the Constitution otherwise provides, only such powers as may be delegated to it by the Legislature." *Clark*, 105 So. at 505. *See also Bobo*, 46 So. at 824 ("the Legislature has the amplest power to change, alter, and modify the machinery of a board like [the Levee Board], so long as it does not trench upon any constitutional rights that such board may have ... .").

¶15.   Regarding the discretionary powers of the Board, this Court stated in *Bobo* that:

> [q]uite an array of authorities is cited to the proposition that bodies of legislative creation, like this levee board, are entitled to the protection of the courts so far as *their autonomy, their property, and internal affairs are concerned*; *that these are matters which are committed by the Constitution to*

---

[7]According to Webster's Third New International Dictionary, "plenary" is defined as "complete in every respect: Absolute, Perfect, Unqualified." Webster's Third New International Dictionary p. 1739 (1986).

13

*the discretion of the governing body of the levee board; that this board, by the provisions of the Constitution, is granted absolute protection in the possession, control, and disposition of its property*; and that, whilst it may be a public corporation, as distinguished from a private corporation, and in political and governmental matters may be the representative or auxiliary of the state, nevertheless it is a separate and distinct corporation in all other matters, entirely independent of the state, with property rights which are protected, and of which it cannot be deprived without due process of law. The general principle here announced is also sought to be fortified by the case of ***Aberdeen Academy v. Aberdeen***, 13 Smedes & M. 645. There is no sort of doubt as to the correctness of the general principle announced in these decisions.

46 So. at 823 (emphasis added) (although the principle had no application to the act at issue in ***Bobo***, which this Court found did not deprive the Board of any of its property or deny it any due process of law). *But see **Gully v. Williams Bros.***, 182 Miss. 119, 180 So. 400, 404 (1938) (pointing out that the ***Aberdeen Academy*** decision cited in ***Bobo***, which "involved the right of the Legislature in 1850 to divert liquor license funds from the municipality to which it had been granted by the charter of the city of Aberdeen in 1837; which funds the Legislature in 1848 undertook to divert from the city to the academy," was "overturned, although not expressly overruled, in the case of ***State Board of Education v. Aberdeen***, 56 Miss. 518 ... .").

¶16.    Therefore, this Court will first examine whether Section 7(4) violated any specific constitutional authority granted to the Board. This is a threshold consideration because "a state constitution does not grant specific legislative powers, but limits them, and ... the lawmaking department possesses all legislative powers not prohibited or restricted by the state or federal constitution, and certainly the power extends to circumstances not covered by the constitutions at all." ***Farrar v. State***, 191 Miss. 1, 2 So. 2d 146, 148 (1941). *See also*

14

*Albritton*, 178 So. at 803 ("The legislative department is primarily charged with the duty of determining by what means [the promotion of the welfare of its citizens] can be accomplished. To that end it is invested, by [Article 4,] section 33 of our State Constitution, with all legislative power, except in so far as other sections of the Constitution place a limitation thereon."); *Bobo*, 46 So. at 824; *Clark*, 105 So. at 505. In *Franklin*, for instance, this Court found chapters 169[8] and 170[9] of the Acts of 1922 "constitutional as a reasonable regulation of the affairs of the board. The Legislature has the right to prescribe, alter, or change at its discretion the procedure and method of operation of the board, so long as it does not infringe upon the proper and efficient exercise of the power granted the levee commissioners by the Constitution." 130 Miss. at 164, 93 So. at 740. Moreover:

> the *control of the purse strings of government is a legislative function*. Indeed, it is the *supreme legislative prerogative*, indispensable to the independence and integrity of the Legislature, and *not to be surrendered or abridged*, *save by the Constitution itself*, without disturbing the balance of the system and endangering the liberties of the people. The right of the Legislature to control the public treasury, to determine the sources from which the public revenues shall be derived and the objects upon which they shall be expended, to dictate

---

[8]"Chapter 169 provides that, except in cases of emergency ... , the board is required to let all contracts for material and work in connection with the maintenance or repair of the levees by advertisement for three weeks in a newspaper, and the board shall receive bids for said work and award the contract to the lowest responsible bidder." *Franklin*, 130 Miss. at 164, 93 So. at 739.

[9]"Chapter 170 provides that the board shall have a president, a chief engineer, an assistant chief engineer, an attorney or firm of attorneys, a pump engineer, a secretary and treasurer, a caretaker, and such other clerical and stenographic help as needed, and such common laborers as may be deemed necessary to carry on the work of the board, but that said board shall have no other paid officers or employees, except in cases of emergency. The act then prescribes that the salary or compensation of the officers and employees shall be fixed by the board within certain limitations ... ." *Franklin*, 130 Miss. at 164, 93 So. at 739.

the time, the manner, and the means both of their collection and disbursement, is firmly and inexpugnably established in our political system.

*Colbert v. State*, 86 Miss. 769, 39 So. 65, 66 (1905) (emphasis added). Therefore, Board funds are properly considered subject to legislative control absent constitutional provisions otherwise.

¶17. The State not only contends that Section 7(4) did not violate any specific constitutional authority granted to the Board, it further asserts that the constitutional provisions of Article 11, Section 227 et seq. support its passage. It points to the specific language in Article 11, Section 237;[10] Article 11, Sections 235[11] and 239;[12] and Article 11, Section 234[13] to support its argument that the Legislature was constitutionally empowered to enact bills affecting Board revenues.

---

[10]Article 11, Section 237 states: "[t]he legislature shall have full power to provide such *system of taxation* for said levee districts as it shall, from time to time, deem wise and proper." Miss. Const. art. 11, Section 237 (emphasis added).

[11]Article 11, Section 235 states: "[e]ach levee board shall make, at the end of each fiscal year, to the governor of this state, a report showing the condition of the levees and recommending such additional legislation on the subject of the system as shall be thought necessary, and showing the receipts and expenditures of the board, so that each item, the amount and consideration therefor, shall distinctly appear, together with such other matters as it shall be thought proper to call to the attention of the legislature." Miss. Const. art. 11, Section 235.

[12]Article 11, Section 239 states: "[t]he legislature shall require the levee boards to publish at each of their sessions an itemized account embracing their respective receipts since the prior session, and such appropriations as have been made or ordered by them respectively, in some newspaper or newspapers of the district." Miss. Const. art. 11, Section 239.

[13]See paragraph 3 for the text of Article 11, Section 234.

¶18.    The State also points out that since the Board was created in 1884, the Legislature has

passed over 140 bills regulating its affairs, including its financial affairs.  For instance, the

Legislature has regulated the manner and amount of bonds the Board could raise pursuant

to state law, *see* Chapter 60 of the Laws of 1892 (adopted April 1, 1892); authorized the

Board to spend funds on particular projects and regulated the salaries payable to Board

employees, *see*, *e.g.*, Chapter 81 of the Laws of 1894 (adopted February 7, 1894), Chapter

170 of the Laws of 1922 (adopted March 31, 1922); and directly appropriated general funds

of the State to the Board, *see* Chapter 61 of the Laws of 1918.[14]  In sum, the State argues that

Section 7(4) is simply another constitutional manifestation of the Legislature's power in

regulating the financial affairs of the Board.  As legislative control over the Board's financial

affairs has repeatedly occurred since its inception, it contends the financial affairs addressed

in Section 7(4) are also "subject to [the Legislature's] supervision and control."  *See **Clark***,

105 So. at 505.

¶19.    The Board counters that the plain language of Article 11 renders Section 7(4) facially

unconstitutional.  Article 11, Section 229 states:

> There shall be a board of levee commissioners for the Yazoo-Mississippi delta
> levee district which shall consist of two members from each of the counties of
> Coahoma and Tunica, and one member from each of the remaining counties,
> or parts of counties now or hereafter embraced within the limits of said district.

Miss. Const. art. 11, Section 229.  *See also **Yazoo & M.V.R.***, 195 So. at 706 ("[u]nder

Section 227 et seq. of the Constitution, this levee district is in the same situation as if it had

---

[14]See footnote 3 for the text of Section 2 of Chapter 61, Laws of 1918 - House Bill
No. 33.

been originally created by the Constitution ... ."). The Board asserts that this language effectively acts as a constitutional charter. As such, the Board contends the language of Article 11 pertaining to the Board takes on a constitutional character. Article 11, Section 232 states, "[t]he commissioners of said levee districts shall have *supervision of the erection, repair, and maintenance of the levees* in their respective districts ... ." Miss. Const. art. 11, Section 232 (emphasis added). *See also **Ham***, 35 So. at 946 ("it was the intention to vest the boards of levee commissioners with *plenary authority* to deal with the 'erection, maintenance and repair' of the levee system at their discretion, for the purpose of protecting the property of their respective districts from loss and destruction.") (emphasis added). In the estimation of the Board, it can only meet this constitutional obligation of erecting, repairing, and maintaining the levees if it controls the revenues acquired within the District for levee purposes. While it concedes that Article 11, Sections 236 and 237 grant the Legislature limited power over the "system of taxation,"[15] the Board asserts that all tax revenues therefrom are to be paid directly to the Board "for levee purposes."[16] *See also **Bobo***, 46 So. at 823 ("bodies of legislative creation, like this levee board, are entitled to the protection of the courts so far as their *autonomy, their property, and internal affairs are concerned*; that *these are matters which are committed by the Constitution to the discretion of the governing body of the levee board*; that this board, by the provisions of the Constitution, is granted

[15]See footnote 10.

[16]Article 11, Section 236 provides for legislatively imposed levee taxes "for levee purposes" to "be paid into the treasury of the levee board of the district in which the land charged with the same is situated ... ." Miss. Const. art. 11, Section 236.

18

absolute protection in the possession, control, and disposition of its property ... .") (emphasis added). In other words, the power of the Legislature extends only to the system of taxation, and not control over the Board's revenues. Therefore, the Board asserts Section 7(4), which directs funds of the Yazoo-Mississippi Delta Levee District to the Budget Contingency Fund of the State, to be an unconstitutional act of legislative control because it was wrought in direct contravention of the express constitutional provisions of Article 11. In support, the Board cites *Board of Trustees of State Institutions of Higher Learning v. Ray*, 809 So. 2d 627, 637 (Miss. 2002), for the proposition that, "[w]hile ... the legislature possesses the power to take away by statute what has been given by statute, the same cannot be said for that created by the Constitution. To allow this would be an affront to our Constitution." *See also Bobo*, 46 So. at 824 ("the Legislature has the amplest power to change, alter, and modify the machinery of a board like [the Levee Board], so long as it does not trench upon any constitutional rights that such board may have ... ."). As a "constitutionally-created entity" rather than a "statutorily-created entity" by virtue of Article 11, the Board insists that Section 7(4) unconstitutionally usurps the Board's control over its own revenues.

¶20. The State replies that the express constitutional provisions of Article 11 relied upon by the Board lack sufficient clarity regarding the constitutionality of Section 7(4). It asserts that the Board's authority under Article 11 to supervise the "erection, repair, and maintenance" of the levees does not immunize it from legislative control over its funds. Because any "doubt regarding the constitutionality of an act is to essentially declare it constitutionally valid," *Moore*, 658 So. 2d at 887 (citing *Ivy,* 70 So. 2d at 865), the State

19

asserts that the Legislature also had the inherent constitutional authority to enact Section 7(4).[17]

¶21.   The State contends that any attempt to limit the Legislature's power over the revenues of the Board must be express.  *See Farrar*, 191 Miss. at 1, 2 So. 2d at 148 ("a state constitution does not grant specific legislative powers, but limits them, and ... the lawmaking department possesses all legislative powers not prohibited or restricted by the state or federal constitution, and certainly the power extends to circumstances not covered by the constitutions at all.").  For example, Article 8, Section 206A of the Mississippi Constitution places certain education funds beyond the Legislature's budget authority.  *See* Miss. Const. art. 8, Section 206A.  Because Article 11 contains no such express restriction,[18] the State asserts that the funds at issue were subject to the inherent constitutional authority of the Legislature.

¶22.   To establish that Board funds are public funds "within the exclusive province of the legislature," *id*., the State argues that the Board is simply a state agency.  *See Nugent v. Board of Mississippi Levee Com'rs*, 58 Miss. 197, 1880 WL 6893 at *8 (1880) (prior to the Mississippi Constitution of 1890, this Court found that "in this case it is clear that the Legislature intended merely to create a State agency. ... [The Board of Mississippi Levee

---

[17]Note that if specific constitutional authority exists regarding the provisions of Section 7(4), any discussion of inherent constitutional authority is moot.  This is the position of the Board which dismisses the inherent constitutional authority argument of the State arguing, "general Legislative power cannot be a bootstrap to dispossess the Levee Board of the plenary authority expressly granted by the Constitution."

[18]Rather, the State argues Article 11 expressly permits the Legislature to enact bills affecting the Board's financial resources.

Commissioners] has merely administrative duties to perform - a work prescribed by the Legislature, and with means furnished by the Legislature.").[19] The Board points to the constitutionally vested authority of the Levee Board to establish its place as an autonomous branch of government. *See Yazoo & M.V.R.*, 195 So. at 706 ("[u]nder Section 227 et seq. of the Constitution, this levee district is in the same situation as if it had been originally created by the Constitution ... ."). The State, however, replies that the Board is analogous to the Board of Trustees of State Institutions of Higher Learning ("Board of Trustees"), which was made a constitutional body by constitutional amendment in 1944. *See Van Slyke v. Board of Trustees of State Institutions of Higher Learning*, 613 So. 2d 872, 877 (Miss. 1993) (citing *State ex rel. Allain v. Board of Trustees of Institutions of Higher Learning*, 387 So. 2d 89, 91 (Miss. 1980)). In *Allain*, this Court described the Board of Trustees as "a constitutionally created state agency." 387 So. 2d at 91. As such, this Court found in *Van Slyke* that the chancellor did not err in "finding that the Board of Trustees is part of the executive branch of government, rather than an autonomous or fourth branch of government." 613 So. 2d at 877. Moreover, the State points out that the Board has been characterized as part of the executive branch rather than an autonomous branch of government. *See Haley*, 108 Miss. at 899, 67 So. at 499 ("[w]e think the board of levee commissioners belongs to the executive department ... .").[20] Therefore, the State claims that

---

[19]The State also notes that Board employees participate in the state retirement system ("PERS").

[20]The Board contends that *Haley* stands only for the proposition that under Article 1, Sections 1 and 2 of the Mississippi Constitution, an individual cannot remain on the Board of Supervisors (a judicial branch) when appointed as a Levee Commissioner (a non-

21

the funds of the Board are public funds, subject to legislative control absent explicit removal from the inherent budget authority of the Legislature, and the absence of any specific prohibition to legislation like Section 7(4) thus creates reasonable doubt which must be resolved in favor of Section 7(4)'s constitutionality. *See Moore*, 658 So. 2d at 887 (citing *Ivy,* 70 So. 2d at 865) ("doubt regarding the constitutionality of an act is to essentially declare it constitutionally valid ... .").

¶23.    The State further argues that if the Board is a state agency whose funds are subject to legislative control by virtue of the absence of constitutional provisions otherwise, then Board revenues may be used for non-levee purposes. The Board counters that in *Nugent* this Court found that the revenue of the Board consists solely:

> of taxes levied by the Legislature, to be expended solely in the performance of the public duty of protecting the district from overflow. ... This fund is ... raised by a specific tax - a mode of taxation authorized by the Constitution only for the erection of works of this character; and this stamps it essentially as a trust fund devoted exclusively to the work provided for.

58 Miss. 197, 1880 WL 6893 at *8. In other words, "[the] expression of the purpose of the tax in the act is an exclusion of all other purposes." *Id*. at *12. *See also Board of Levee Com'rs v. Hemingway*, 66 Miss. 289, 6 So. 235, 236 (1889).[21]   While both *Nugent* and *Hemingway* preceded the Constitution of 1890, the Board asserts that the principles therein remain applicable under *Lowe v. Board of Levee Com'rs for Yazoo-Mississippi Delta*, 19 So. 346 (Miss. 1896), which was "covered and controlled" by the *Nugent* decision. *Id*.

judicial branch). *See id*. at 498.

[21]The State contends that the characterization of levee funds in *Hemingway* is fact-specific to the appropriation act at issue in that case.

¶24.    The State contests the Board's assertions, citing prior holdings of this Court regarding legislative control over "the purse strings of government."  *See* ***Colbert***, 39 So. at 67 ("we are constrained to believe that the Constitution regards the Legislature as the *sole repository of power* to make appropriations of moneys to be paid out of the *state treasury*.") (emphasis added); ***Washington County v. Board of Miss. Levee Com'rs***, 171 Miss. 80, 156 So. 872, 873 (1934) (regarding the appropriation of certain sixteenth section lands for levee district purposes, "[i]t appears to be well-settled that, in the absence of constitutional prohibition, the Legislature may authorize the taking of property devoted to a public use for a different public use ... ."); ***Bailey***, 236 So. 2d at 423 ("[t]he appropriation of *public funds* is traditionally within the *exclusive province* of the legislature.") (emphasis added).  In sum, the State asserts that all state agencies using funds for a particular purpose are administering a public trust, yet this alone does not preclude legislative control over the direction of those funds.

¶25.    The Board faces a high burden because "under Mississippi law a party challenging the constitutionality of a statute must prove unconstitutionality beyond a reasonable doubt." ***Cities of Oxford***, 704 So. 2d at 65 (citing ***Wiesenberg***, 633 So. 2d at 989; ***Goudy***, 459 So. 2d at 263).  Nonetheless, "no citation of authority is needed for the universally accepted principle that if there be a clash between the edicts of the constitution and the legislative enactment, the latter must yield." ***Newell v. State***, 308 So. 2d 71, 77 (Miss. 1975).  This Court must determine whether Section 7(4) conflicts with the language of the constitution.

¶26.    Section 7(4) clearly conflicts with the language of the Mississippi Constitution of 1890, Article 11, Sections 232 and 236.  Article 11, Section 232 gives the Board "plenary

23

authority to deal with the 'erection, maintenance, and repair' of the levee system ... ." ***Ham***, 35 So. at 946. Article 11, Section 236 expressly prohibits the use of Board funds for non-levee purposes. Since Section 7(4) mandates Board funds be converted to the Budget Contingency Fund for use other than levee purposes (the erection, maintenance, and repair of the levee system), the Legislature overstepped the bounds of its constitutionally imposed limitation.

¶27. Prior to the adoption of the Mississippi Constitution of 1890, the Board was simply viewed as a state agency. *See **Nugent***, 58 Miss. at 197. In the Mississippi Constitution of 1890, the Board is referred to as a "board." Miss. Const. art. 11, Section 229. Following adoption of the Mississippi Constitution of 1890, the Board was viewed as a constitutionally-created organization, *see **Yazoo & M.V.R.***, 195 So. at 706, but also as a part of the executive branch. *See **Haley***, 108 Miss. at 899, 67 So. at 499. While the Board is subject to legislative control absent constitutional provision otherwise, *see **Clark***, 105 So. at 505; ***Bobo***, 46 So. at 824, the framers did not grant legislative authority to frustrate the purposes of a constitutionally-created organization. While the Legislature does have the power to tax and appropriate, *see **Colbert***, 39 So. at 66, that power is limited by the Mississippi Constitution with respect to Board funds. *See* Miss. Const. art. 11, Section 236; ***Bobo***, 46 So. at 824. In short, Article 11, Section 236 does not permit the Legislature to take Board funds which are constitutionally mandated for levee purposes, and redirect them toward non-levee purposes. To hold otherwise would subvert the Mississippi Constitution. Therefore, while the

Legislature is empowered to seek amendments to the Mississippi Constitution if they so desire, until that time, this Court finds Section 7(4) unconstitutional.

¶28.   Since Section 7(4) has been declared unconstitutional, the remaining issues are moot, and this Court declines to address them.

## CONCLUSION

¶29.   "[U]nder Mississippi law a party challenging the constitutionality of a statute must prove unconstitutionality beyond a reasonable doubt." *Cities of Oxford*, 704 So. 2d at 65 (citing *Wiesenberg*, 633 So. 2d at 989; *Goudy*, 459 So. 2d at 263).  Nonetheless, "no citation of authority is needed for the universally accepted principle that if there be a clash between the edicts of the constitution and the legislative enactment, the latter must yield." *Newell*, 308 So. 2d at 77.  This Court finds that Section 7(4), in authorizing the use of Board funds for non-levee purposes, plainly conflicts with the clear language of Article 11, Sections 232 and 236 of the Mississippi Constitution of 1890 and, therefore, is unconstitutional.

¶30.   **AFFIRMED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES, AND DICKINSON, JJ., CONCUR.   EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  DIAZ, J., NOT PARTICIPATING.**

25